**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ECTOR COUNTY ENERGY CENTER LLC,[1] | Case No. 22-10320 (JTD) |
| Debtor. | **Re: Docket Nos. 6, 71, 134** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED LENDERS, (III) MODIFYING AUTOMATIC STAY,
AND (IV) GRANTING RELATED RELIEF**

Ector County Energy Center LLC, the debtor and debtor-in-possession (the "Debtor") in

the above captioned chapter 11 case  ("Chapter 11 Case"), having filed a *Motion of Debtor for*

*Entry of Orders (I) Authorizing the Debtor to Use Cash Collateral, (II) Granting Adequate*

*Protection to Prepetition Secured Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a*

*Final Hearing, and (V) Granting Related Relief* (the "Motion"), on April 11, 2022 [Docket No. 6],

requesting, pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002 and 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 2002, 4001-2, 9006-1 and 9013-1(m) of the Local

Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), on

an emergency basis, entry of an interim order and, following a final hearing (the "Final Hearing"),

entry of a final order (this "Final Order"), providing the following relief:

---

[1]  The last four digits of the Debtor's federal tax identification are 6852.  The Debtor's mailing address is One South Wacker Drive, Suite 1900, Chicago, IL, 60606, and the Debtor has a principal place of business at 8200 OB Holt Road, Goldsmith, Ector County, Texas, 79761.  More information about the Debtor and this case is available on the website maintained by Donlin, Recano & Company, Inc., the Debtor's claims and noticing agent, at www.donlinrecano.com/ecec, or can be requested by e-mail at ececinfo@donlinrecano.com.

(a) authorizing the Debtor to use Cash Collateral (as defined in the Motion) in which Credit Suisse AG, Cayman Islands, as administrative agent and as collateral agent (the "Agent"), holds an interest on the collective behalf of the Prepetition Secured Lenders[2];

(b) providing adequate protection to the Prepetition Secured Lenders for any diminution of their collective secured interest in the Prepetition Collateral resulting from the (i) use, sale or lease of the Debtor's property in accordance with the Final Order or (ii) the imposition of the automatic stay;

(c) modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor, the Agent, and the Prepetition Secured Lenders to implement the terms of the Final Order;

(d) waiving any applicable stays under the Bankruptcy Rules and providing for the immediate effectiveness of the Final Order; and

(e) granting related relief.

An interim hearing ("Interim Hearing") having been held on April 13, 2022 to consider the relief requested in the Motion, pursuant to Bankruptcy Rules 2002, 4001(b) and (d), 9014, and Local Rule 4001-2; and this Court having entered the *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* on April 14, 2022 [Docket No. 71] (the "First Interim Order") and the *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* on May 6, 2022 [Docket No. 134] (the "Second Interim Order"), granting the relief sought by the Motion on an interim basis; and the Final Hearing having been held from May 31 to June 2, 2022 to consider the relief requested in the Motion; and upon the record made

---

[2] Capitalized terms not herein defined shall have the meanings ascribed in the Motion.

by the Debtor at the Interim Hearing and the Final Hearing; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    **Commencement of Case**. On April 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "Court"), thereby commencing the Chapter 11 Case.

B.    **Debtor in Possession**. Since the Petition Date, the Debtor has been managing and operating its business and properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2). The predicates for relief sought herein are section 105, 361, 362 and 363 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee**.  As of the date hereof, no official committee of unsecured creditors has been appointed in the Chapter 11 Case (any such committee, the "Creditors' Committee" and, together with any other statutory committee appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, a "Committee").

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

#95712693v7

E.    **Notice**. The Debtor has represented that notice of the Final Hearing and the emergency relief requested in the Motion has been provided by the Debtor in accordance and compliance with Bankruptcy Rules as well as the Local Rules and is sufficient under the circumstances.  Without limiting the forgoing, the Debtor has represented that due notice of the filing of the Motion, of the Interim Hearing, and the opportunity to object was afforded, whether by facsimile, electronic mail or overnight courier on April 12, 2022, and again, with regard to the Final Hearing and the opportunity to object, on April 14, 2022, to certain parties in interest, including: (a) the United States Trustee for the District of Delaware; (b) the parties set forth on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) Davis Polk & Wardwell LLP, counsel to the Agent and the Ad Hoc Group, Attn: Brian Resnick, Esq. and Joshua Sturm, Esq., 450 Lexington Avenue, New York, NY 10017 (brian.resnick@davispolk.com; joshua.sturm@davispolk.com) and Richards, Layton & Finger, P.A., Attn: Mark D. Collins, Esq. (collins@rlf.com); (d) all known parties, to the best of  the Debtor's knowledge, information, or belief, asserting a lien against the Prepetition Collateral; (e) all relevant taxing jurisdictions; (f) the Electric Reliability Council of Texas and the Public Utilities Commission of Texas; and (g) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and the Local Rules (collectively, (a) through (g), the "Notice Parties"). No other notice need be provided for the Motion or entry of the Final Order.

F.    **Prepetition Loan Documents**.  The Debtor stipulates that ECEC is a party to that certain (a) Amended and Restated Credit and Guaranty Agreement, dated as of August 22, 2019 (as amended by that certain Amendment No. 1 to the Amended and Restated Credit and Guaranty Agreement, dated as of March 3, 2020, by that certain Amendment No. 2 to the Amended and

4

Restated Credit and Guaranty Agreement, dated as of February 24, 2021, by that certain Amendment No. 3 to the Amended and Restated Credit and Guaranty Agreement, dated as of April 28, 2021 and by that certain Amendment No. 4 to the Amended and Restated Credit and Guaranty Agreement, dated as of April 4, 2022, the "Credit Agreement"), by and among ITOI, as borrower, the Debtor and certain of its non-debtor affiliates, as Subsidiary Guarantors,[4] each of the banks and other financial institutions party thereto as Lenders,  the financial institutions from time to time parties thereto as issuing banks in respect of Revolving Letters of Credit (the "Revolving LC Issuers", collectively with the Lenders, the "Prepetition Secured Lenders"), and the Agent (together with the Prepetition Secured Lenders, the "Prepetition Secured Parties"), and (b) the other "Loan Documents" (as defined in the Credit Agreement and, together with the Credit Agreement, the "Prepetition Loan Documents"), pursuant to which the Prepetition Secured Lenders agreed to provide term loans (those lenders, the "Term Lenders") and revolving loans (those lenders, the "Revolving Lenders") to, and to issue and/or participate in Revolving Letters of Credit (as defined in the Credit Agreement) to and for the account of, ITOI.

G.    **Prepetition Secured Guarantees**.  The Debtor stipulates that in accordance with the Credit Agreement, ECEC, and each of the other Subsidiary Guarantors, provided an unconditional joint and several guaranty (the "Guaranty") of "due and punctual payment in full of all Secured Obligations[5]… when the same shall become due, whether at stated maturity, by required prepayment, declaration, acceleration demand or otherwise …," defined in the Credit Agreement as the "Guaranteed Obligations."

---

[4] The Subsidiary Guarantors are, in addition to ECEC: *Invenergy Thermal LLC, Invenergy Development Company LLC, Invenergy Nelson Holdings LLC, Ector County Energy Center Holding LLC, Invenergy Grays Harbor Holding LLC, Invenergy Grays Harbor LLC, Invenergy Nelson LLC and Grays Harbor Energy LLC.*

[5] As defined in the Credit Agreement.

#95712693v7

H.      The Debtor stipulates that ECEC secured its obligations to the Prepetition Secured Lenders under the Credit Agreement through a separately executed Pledge and Security Agreement dated August 28, 2018 ("Security Agreement," and included in the Prepetition Loan Documents, defined above), granting the Prepetition Secured Lenders a first-priority security interest in and lien upon its real and personal property assets and the proceeds thereof (the "Prepetition Collateral").

I.      The Debtor stipulates that separately, the Prepetition Secured Lenders' security interests in ITOI, ECEC and the Subsidiary Guarantors' cash and cash equivalents generated from operation of the ITOI Projects, including the Power Plant, were perfected under a Depositary Agreement, dated as of August 28, 2018 (as amended, the "Depositary Agreement"), among ITOI, the Subsidiary Guarantors, the Agent and The Bank of New York Mellon, as the depositary bank (the "Depositary Bank"). The Depositary Agreement provides the Agent, on behalf of the Prepetition Secured Lenders, a first priority lien and control over each of the Obligors' (as defined in the Credit Agreement) right, title and interest in funds on deposit with the Depositary Bank in various "Collateral Accounts" (as defined in the Depositary Agreement), maintained by ITOI and each of the Subsidiary Guarantors in connection with their business operations in the ordinary course. The Collateral Accounts maintained with the Depository Bank include the Ector Revenue Account (as defined in the Depositary Agreement), receiving all income and receipts generated through operation of the Power Plant, and the Ector Operating Account (as defined in the Depositary Agreement), from which ECEC's operating and maintenance expenses are paid. Additionally, ECEC maintains the Local Account (as defined in the Depositary Agreement) in Ector County with JP Morgan Chase that is subject to a Deposit Account Control Agreement in

favor of the Agent (collectively, the Local Account and the Collateral Accounts, the "Account Collateral" and included in the definition of "Prepetition Collateral").

J.      The Debtor stipulates that ECEC's obligations to the Prepetition Secured Lenders as Subsidiary Guarantor are also secured by a deed of trust granted on ECEC's owned real estate assets and improvements and easement rights pertaining to the Power Plant property in Ector County, Texas, through a *Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing*, as amended on August 22, 2019, recorded by the Agent with the Public Records Office of Ector County, Texas.

K.      **Claim Stipulation**. The Debtor agrees, acknowledges and stipulates for itself and its estate that, under the Credit Agreement, as of the Petition Date: (i) the Term Lenders hold (x) valid, enforceable, contingent and liquidated guaranty claims against the Debtor for an aggregate amount of no less than $337,319,920.82 (the "Term Lender Guaranty Claims"), (y) a valid, enforceable and liquidated claim under the Credit Agreement against the Debtor for $75,000,000 (the "Ector Prepayment Claim"), and (z) other Obligations (as defined in the Credit Agreement, together with the Term Guaranty Claims and the Ector Prepayment Claim, and any additional interest, fees, costs and expenses, including any legal fees, reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing under or in connection with the Prepetition Loan Documents, collectively, the "Prepetition Term Loan Obligations"); and (ii) the Revolving Lenders hold valid, enforceable, contingent and liquidated guaranty claims against the Debtor under the Credit Agreement in  connection with issued and outstanding letters of credit, for an aggregate amount of no less than $64,553,598.00 (together with any additional interest, fees, costs and expenses, including any legal fees, reimbursement obligations, indemnification

#95712693v7

obligations, contingent obligations, and other charges of whatever nature, whenever arising, due, or owing under or in connection with the Prepetition Loan Documents, the "Prepetition Revolving Loans Obligations", together with the Prepetition Term Loan Obligations, the "Prepetition Obligations").

L.    **Lien Stipulation**.  The Debtor agrees, acknowledges and stipulates for itself and its estate that the liens and security interests granted by the Debtor to secure its obligations under the Credit Agreement, the Guaranty and any other of the Loan Documents (the "Prepetition Liens") constitute valid, perfected, unavoidable and enforceable first priority liens and secured interests in all respects as to the Prepetition Collateral.

M.    **Plan Support Agreement**.  The Debtor represents and stipulates that the Debtor, the Agent, Term Lenders holding no less than 66.67% of the aggregate outstanding balance as of the Petition Date of the term loans outstanding under the Credit Agreement (the "Consenting Term Lenders") and Revolving Lenders holding 100% of the Revolving Loan Exposure (as defined in the Credit Agreement) as of the Petition Date under the Credit Agreement (the "Consenting Revolving Lenders" and together with the Consenting Term Lenders, collectively, the "Consenting Lenders") have entered a Plan Support Agreement dated as of April 4, 2022 (the "Plan Support Agreement"), setting forth the terms under which the Debtor will seek, and the Consenting Lenders will support, *inter alia*, authority to use Cash Collateral, approval of post-petition financing (any such financing consented to by the Agent acting at the direction of the Requisite Consenting Lenders and approved by the Court, the "DIP Financing", the motion seeking interim or final approval by this Court of any DIP Financing, the "DIP Motion", and any interim or final order by this Court authorizing such DIP Financing, the "DIP Financing Order") and confirmation of a liquidating chapter 11 plan.  A copy of the Plan Support Agreement has

been filed as Exhibit A to the *Declaration of John Baumgartner, Chief Restructuring Officer, in Support of Chapter 11 Petition, First Day Motions, and Related Relief* [Docket No. 2].

       N.     **Stipulations Regarding Cash Collateral**.  The Debtor represents and stipulates that all of the Debtor's cash, cash equivalents, negotiable instruments, investment property, and securities (other than cash deposits funded by the Debtor for the benefit of certain of the Debtor's suppliers and regulatory agencies prior to the Petition Date in the ordinary course of business, or those cash deposits specifically anticipated to be posted during the pendency of this case as set forth in the Budget, to the extent permitted by other Court orders, including, but not limited to, cash to be segregated for the benefit of the Debtor's utility service providers; retainers held by the Debtor's professionals; and funds held in escrow accounts as of the Petition Date unless and until such funds become property of the Debtor's estate pursuant to the terms of the applicable asset purchase agreement or an order of the Court), and the LC Deposit, defined below, which LC Deposit constitutes the cash collateral of Credit Suisse AG, New York Branch in its capacity as Revolving LC Issuers, exclusively) (the "Excluded Cash Deposits")  constitute Cash Collateral of the Agent on behalf of itself and the other Prepetition Secured Parties. The Debtor continues to collect cash, rents, income, offspring, products, proceeds and profits generated from the Cash Collateral, all of which constitute Prepetition Collateral subject to the Prepetition Liens. All Cash Collateral and all proceeds of the Prepetition Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, shall be used and/or applied in accordance with the terms and conditions of this Final Order, and for no other purpose.  As security for the Debtor's obligation to reimburse those Prepetition Secured Lenders that have acted as Revolving LC Issuers (as defined in the Credit Agreement), in the event of a draw on posted letters of credit, the Debtor has deposited funds in a segregated cash collateral account with The Bank of New York,

#95712693v7

N.A. (the "L/C Deposit"), held in the name of Credit Suisse AG, New York Branch in its capacity as Revolving LC Issuer, to secure the ECEC's contingent liability in the event of a draw on either or both the $7 million letter of credit posted in connection with the HRCO in favor of Direct Energy ("HRCO Letter of Credit") or the $225,000 letter of credit posted in favor of  OneOK Texas Gas Storage, LLC (the "OneOK Letter of Credit").

O.      **Prepetition Obligations as Valid and Binding Obligations**.  The Debtor agrees, acknowledges and stipulates for itself and its estate that the Prepetition Obligations constitute the legal, valid and binding obligations under the Credit Agreement, where the Debtor is (i) a primary Obligor (as defined in the Credit Agreement) with respect to the Obligations provided in Section 3.02(b)(vii) of the Credit Agreement and (ii) a joint and several Subsidiary Guarantor with respect to all other Obligations, each in accordance with the terms of the Credit Agreement, the Guaranty and any other of the Loan Documents, which guaranty is valid and enforceable by its terms and in all respects.  No portion of the Prepetition Obligations or any payments made to the Agent or the Prepetition Secured Lenders is subject to any contest, avoidance, recharacterization, offset, "claim" (as defined in the Bankruptcy Code), attack, disallowance, disgorgement, impairment, reduction, attachment, recoupment, counterclaim, cross-claim, defense, objection, recovery, subordination (whether equitable, contractual or otherwise), cause of action, impairment or any other challenge of any kind or nature pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

P.      **No Valid or Enforceable Claims Against Agent or Prepetition Secured Lenders**.  Subject to the challenge provisions described in Paragraphs 16 through 17 herein, as of the date hereof, except with respect to any claims arising under or in connection with the Plan Support Agreement, the Debtor agrees, acknowledges and stipulates for itself and its estate that

10

it holds no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims or causes of action against the Agent, the Prepetition Secured Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees whether arising at law or in equity, including without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to chapter 5 of the Bankruptcy Code or under any similar provisions of applicable state or federal law, or section 105 of the Bankruptcy Code.

Q.    **Adequate Protection for the Prepetition Secured Parties**.  The Consenting Lenders and the Debtor have represented that they have negotiated in good faith regarding the Debtor's use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtor's estates and continued operation of its business in accordance with the terms hereof.  The Debtor, through the Plan Support Agreement, has received the necessary consents from the Prepetition Secured Parties to the Debtor's proposed use of Cash Collateral, until the Termination Date (as defined below), exclusively in accordance with and subject to the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under section 364(e) of the Bankruptcy Code, to the extent such section applies.  The Prepetition Secured Parties are entitled to the adequate protection as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) as set forth herein are (i) consistent with and authorized by the Bankruptcy Code, (ii) fair and reasonable, (iii) reflect the Debtor's prudent exercise of business judgment, (iv) necessary to protect the Prepetition Secured Parties from the diminution of their respective interests in the value of the Prepetition Collateral, and (v) constitute reasonably

#95712693v7

equivalent value and fair consideration for the Prepetition Secured Parties' consent thereto; provided that nothing in this Final Order shall be construed as a consent by any Prepetition Secured Party to the use of any Prepetition Collateral (including Cash Collateral) except on the terms set forth in this Final Order.

R.    **Credit Bid**.  Pursuant to the PSA, the Agent and each of the Prepetition Secured Lenders by and through the Agent have waived the right to submit a credit bid under section 363(k) of the Bankruptcy Code in connection with a sale of the Debtor's assets under section 363 of the Bankruptcy Code, provided that (i) such sale will provide the Minimum Term Lender Distribution and (ii) the Plan Support Agreement remains in full force and effect.

S.    **Necessity of Relief Requested**. The Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2. The Debtor has demonstrated that without access to the Cash Collateral, the Debtor's ability to manage, administer and preserve the Debtor's estate would be immediately and irreparably harmed, thereby putting at risk consummation of a sale of substantially all of the Debtor's assets and materially impairing the possibility for a successful outcome in the Chapter 11 Case.  The relief requested in the Motion is, therefore, necessary, essential, and appropriate for the management and preservation of the Debtor's estate and in the best interests of the Debtor, its estate, its creditors, and other parties in interest.

Based on the foregoing, and upon the record made at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

12

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      <u>Motion Granted</u>. The Motion is granted on a final basis as herein provided, and the use of Cash Collateral is authorized, subject to the terms and conditions set forth in this Final Order.  Any objections to the final relief requested in the Motion that have not previously been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized to use Cash Collateral (which Cash Collateral shall not include the L/C Deposit) subject to the terms hereof up to the amounts and for the purposes set forth in the Budget (as defined below), through and including the Termination Date (as defined below), and not beyond, subject to the Carve-Out (as defined below) and the provisions of this Final Order.  All of the Debtor's Cash Collateral and any other cash of the Debtor not constituting Cash Collateral shall be maintained in the same accounts in which all such cash and cash equivalents were held as of the Petition Date except to the extent disbursed in accordance with the provisions of this Order, and except to the extent provided for in any other order entered by this Court, including any order allowing for the continued use of the Debtor's cash management system.

3.      <u>Approved Budget and Periodic Reporting</u>.

(a)      The Debtor's use of Cash Collateral is authorized, and shall be in accordance with the budget attached as <u>Exhibit A</u> to the Interim Order (the "<u>Initial Budget</u>"), and as updated in accordance with the provisions of this Order (each such update, an "<u>Updated Budget</u>" and with the Initial Budget, a "<u>Budget</u>"), in each instance subject to the limitations and variances set forth herein. Cash Collateral use shall be limited to the payment of operating costs

and other administrative expenses, Statutory Fees (as defined below), ordinary course and other payments authorized or directed by this Court, such as (i) professional fees and fees incurred by the Agent and the Ad Hoc Group (discussed below), (ii) the Court approved fees of the Debtor's legal and financial professionals, including any investment banker whose retention is approved by the Court, fees for the members of the special committee of the Board of Managers of Invenergy AMPCI, fees and expenses of any Chief Restructuring Officer whose retention is approved by the Court, in accordance with the terms of any order approving such retention, and (iii) the Court approved fees and expenses of any Committee professionals whose retention is approved by the Court, but not including any success fee of a Committee professional.  The Initial Budget that has been approved by the Agent and a requisite percentage of Consenting Lenders (the "Requisite Consenting Lenders") for the period starting with the Petition Date (the Initial Budget, and any other budget subsequently approved by the Agent (acting at the direction of the Requisite Consenting Lenders), an "Approved Budget") is attached as Exhibit A to the Interim Order.  Any subsequent Approved Budget, or "Updated Budget," must be filed promptly with the Court.

(b)    Updated Budgets and Periodic Reporting.  During the period of the Debtor's authority to use Cash Collateral, the Debtor shall furnish to the Agent the following: (i) no later than five (5) days before each month-end, starting in April 2022, a rolling updated 13-week cash flow forecast and budget setting forth all projected cash receipts and expenditures on a line item and cumulative weekly basis for the next 13-week period for review by the Agent and the Ad Hoc Group.  The Requisite Consenting Lenders shall be deemed to have approved such updated budget absent written objection within three days of receipt, provided, however, that approval of any update to an Approved Budget then in effect shall be limited to only the subsequent four week period and that no approval of the Agent or the Requisite Consenting Lenders shall be required

#95712693v7

with respect to any proposed update to the Approved Budget to the extent the previously approved line items therein remain unchanged for the same period set forth in the Approved Budget then in effect.  Upon and subject to the approval of any such Updated Budget by the Agent (acting at the direction of the Requisite Consenting Lenders), such Updated Budget shall constitute the then-Approved Budget; provided, however, that in the event the Agent (acting at the direction of the Requisite Consenting Lenders) and Debtor are unable to reach agreement regarding an Updated Budget, the Approved Budget most recently in effect shall remain the Approved Budget; (ii) no later than one day prior to the end of each month, commencing with April 2022, the Debtor shall deliver to the Agent a monthly operating report in the form and on the date required by the Credit Agreement or such other form as is agreed by the Company and the Agent (acting at the direction of the Requisite Consenting Lenders); and (iii) the Debtor shall deliver to the Agent copies of the Monthly Operating Report substantially simultaneously with filing of the Monthly Operating Report in the Chapter 11 Case.

(c)    Variance Reporting.  Not later than the later of the fifth (5th) day or the Friday following the end of each month, commencing May 2022 (the "Initial Reporting Date"), and not later than the later of the fifth (5th) day or the Friday following the end of each month thereafter (the "Reporting Date" and each month-long period, a "Reporting Period"), the Debtor shall deliver to the Agent a variance report (each, a "Variance Report") setting forth the cumulative operating disbursement variance for the immediately preceding Reporting Period and the cumulative operating disbursement variance from the Petition Date to the date of the then most recently ended Reporting Period, comparing actual cumulative cash receipts and disbursements to the amounts of the cumulative cash receipts and disbursements projected in the Approved Budget.  The Variance Report shall include the percentage and amount by which the actual cumulative receipts and

15

disbursements differed from the cumulative receipts and disbursements set forth in the Approved Budget (x) for such Reporting Period and (y) on a cumulative basis from the Petition Date to the end of the then-most recent Reporting Period.

(d)     Permitted Variances. The Debtor shall not, without the written consent of the Agent (acting at the direction of the Requisite Consenting Lenders) (which may be delivered via email by counsel), make operating disbursements during any Reporting Period in an aggregate amount that would exceed the sum of (i) the aggregate amount of the operating expenses set forth in the Approved Budget for such Reporting Period and (ii) the aggregate positive difference, if any, of the budgeted operating disbursements in the Approved Budget for the Reporting Periods prior thereto (the "Prior Budget Periods") by more than fifteen percent (15.0%) (the "Permitted Variances"), *provided however* that the Agent's Fees (defined below), the Statutory Fees, the approved fees and expenses of any Committee professional whose retention is approved by the Court,  and any disbursement or release of funds from the L/C Deposit or other payments towards the Debtor's reimbursement obligations arising from a draw on any letter of credit issued by the Revolving LC Issuers shall not be included as a budgeted expense in the calculation of Permitted Variances.

4.     L/C Deposit.  To the extent that one or both the HRCO Letter of Credit or the OneOK Letter of Credit is drawn during the pendency of the Chapter 11 Case, Credit Suisse AG, New York Branch in its capacity as Revolving LC Issuer is authorized, allowed and hereby granted relief from the automatic stay imposed by Section 362 of the Bankruptcy Code in order to obtain and apply the L/C Deposit to the extent necessary to fully satisfy any reimbursement claim resulting therefrom.

16

5.     Termination.  The Debtor's authorization to use Cash Collateral shall terminate on a date that is five (5) business days (the "Remedies Notice Period") following the Debtor's receipt from the Agent (acting at the direction of the Requisite Consenting Lenders) of a notice (which may be delivered via email by counsel, such notice, the "Termination Event Notice") of the occurrence of one or more of the events set forth in paragraph 6, below (each a "Termination Event", and such date, the "Termination Date"), unless continued use of Cash Collateral is extended or authorized by an order of this Court.  The Termination Event Notice shall be publicly filed on the docket of the Chapter 11 Case and served on the following additional parties at the same time it is sent to the Debtor:  the U.S. Trustee, any Committee, and Direct Energy Business Marketing, LLC.

6.     Termination Events. The occurrence of each of the following shall constitute a "Termination Event":

(a)     a material breach by the Debtor of the provisions of the Plan Support Agreement including, but not limited to, a failure to meet one or more of the Milestones set forth therein;

(b)     the termination of the Plan Support Agreement by the Debtor or the Requisite Consenting Lender (as defined in the Plan Support Agreement) in accordance with the terms thereof or the Plan Support Agreement otherwise ceases to be in full force and effect;

(c)     (i) the failure of the Debtor to make any payment or reimbursement to the Agent or the Ad Hoc Group as and when such payment or reimbursement becomes due; or (ii) this Court's entry of an order avoiding, disgorging, or requiring repayment of any portion of any payment or reimbursement made by the Debtor to the Agent or the Ad Hoc Group, in each case, unless such fees are either voluntarily reduced by Agent or the Ad Hoc Group or disallowed by the Court;

(d)     the failure of the Debtor to maintain the Cash Collateral in the same accounts in which all such cash and cash equivalents were held as of the Petition Date, except to the extent disbursed in accordance with the provisions of this Order, and except to the extent provided for in any other order entered by this Court, including any order allowing for the continued use of the Debtor's cash management system;

(e)     the expenditure by the Debtor of Cash Collateral for purposes not set forth in the Budget or in amounts that exceed the Permitted Variance;

17

(f)    an order shall have entered relating to the use of Cash Collateral or adequate protection to any party that is not acceptable in all respects to the Agent and Requisite Consenting Lenders;

(g)    an order shall have been entered by this Court (or the Debtor seeks an order) granting any party other than the Agent for the benefit of the Prepetition Secured Lenders, or any party other than the Agent for the benefit of the Prepetition Secured Lenders otherwise obtains, a lien on the Prepetition Collateral or the Adequate Protection Collateral (as defined below), or otherwise having a claim against or recourse to, in each case except as arising under applicable state law, the Debtor, the Prepetition Collateral, or the Adequate Protection Collateral, in each case without the consent of the Requisite Consenting Lenders, that was not held by such party prior to the Petition Date and that is senior to or of equal priority with the liens held by, or granted herein to, the Agent for the benefit of the Prepetition Secured Lenders, with the exception of any relief granted in connection with any DIP Financing or as otherwise agreed to by the Requisite Consenting Lenders, in writing (which writing may be delivered via email by counsel);

(h)    (i) the Court grants any application by any party (other than the Prepetition Secured Parties) seeking allowance or payment of any claim on a superpriority administrative claim basis *pari passu* with, or senior to, the Adequate Protection Superpriority Claims other than as expressly permitted by this Final Order or any DIP Financing Order; or (ii) the filing by the Debtor of a motion seeking any such superpriority administrative claims other than as expressly permitted under this Final Order or any DIP Financing Order or as otherwise agreed to by the Requisite Consenting Lenders, in writing (which writing may be delivered via email by counsel);

(i)    this Final Order ceases to be in full force and effect for any reason or an order is entered (or the Debtor seeks an order) reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the prior written consent of the Agent (acting at the direction of the Requisite Consenting Lenders);

(j)    subject to the terms of the order approving a sale of substantially all of the Debtor's assets as described in the Sale Motion (the "Sale Order"), (i) any Adequate Protection Liens or Adequate Protection Superpriority Claims held by or granted to the Prepetition Secured Parties, as applicable, ceases to be valid, perfected and enforceable in all respects, or the Debtor asserts the invalidity, non-perfection or unenforceability of; or (ii) purports to revoke, terminate or rescind, any of the Adequate Protection Liens or the Adequate Protection Superpriority Claims;

(k)    a filing by the Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Obligations or asserting any other cause of action against and/or with respect to the Prepetition Obligations, the Prepetition Collateral or any of the Prepetition Secured Parties (in their capacity as such) (or if the Debtor supports or fails to contest any such motion, pleading, application or adversary proceeding commenced by any third party);

(l)    subject to the terms of the Sale Order, any lien purported to be created under the Prepetition Loan Documents shall cease to be a valid and perfected lien, with the priority set forth in this Final Order; and

(m)    relief from stay shall have been granted in this Chapter 11 Case for the purpose of any creditor exercising post-default secured party rights, including, but not limited to, rights of foreclosure, upon any of the Prepetition Collateral;

(n)    there shall have occurred an Event of Default under any DIP Financing (as described in any motion seeking approval of DIP Financing);

(o)    the Chapter 11 Case is dismissed or converted to a chapter 7 case, a chapter 11 trustee or an examiner with expanded powers pursuant to section 1106(b) is appointed in the Chapter 11 Case, the Court abstains from hearing the Chapter 11 Case, or the Debtor files a motion or other pleading with the Court seeking any of the foregoing relief;

(p)    the Debtor shall file a motion seeking, or the Court shall enter, an order authorizing the sale of all or any portion of the Debtor's assets, or the Debtor shall sell all or any portion of its assets outside the ordinary course of business, except as contemplated in the Sale Motion, unless such order or sale is consented to by the Requisite Consenting Lenders;

(q)    an order shall have been entered by the Court terminating, shortening, or otherwise modifying (except for extending the period for) the exclusive right of the Debtor to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code without the prior written consent of the Requisite Consenting Lenders;

(r)    the entry of an order in the Chapter 11 Case charging any of the Prepetition Collateral or Adequate Protection Collateral of the Prepetition Secured Parties under sections 506(c) or 552(b) of the Bankruptcy Code against any of the Prepetition Secured Parties under which any person takes action against such collateral or that becomes a final non-appealable order (or any order requiring any of the Prepetition Secured Parties to be subject to the equitable doctrine of "marshaling");

(s)    the commencement of litigation against the Prepetition Secured Lenders by the Debtor or any party in interest in the Chapter 11 Case, other than to enforce the terms of the Plan Support Agreement or this Final Order; or

(t)    The Debtor fails to comply with any other provision of this Final Order.

7.    <u>Rights and Remedies Upon Termination Events</u>.  On the date that is five (5) business days following the Debtor's receipt of the Termination Event Notice, the Agent (acting at the direction of the Requisite Consenting Lenders) and the Prepetition Secured Lenders may exercise the remedies available to them under this Final Order and applicable non-bankruptcy law, including, but not limited to, revoking the Debtor's right to use Cash Collateral and collecting and applying any proceeds of the Cash Collateral, Adequate Protection Collateral and Prepetition

#95712693v7

Collateral in accordance with the terms of this Final Order and the Prepetition Secured Debt Documents. During the Remedies Notice Period, the Debtor may request that this Court order the continued use of Cash Collateral. During the Remedies Notice Period, the Debtor may continue to use Cash Collateral in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business. Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtor shall automatically, without further notice or order of the Court, no longer have the right to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the Agent (acting at the direction of the Requisite Consenting Lenders) and the Prepetition Secured Lenders shall be permitted to exercise all rights and remedies set forth in this Final Order, the Prepetition Loan Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. The delay or failure to exercise rights and remedies under this Final Order or the Prepetition Loan Documents shall not constitute a waiver of the Agent's or Prepetition Secured Lenders' rights thereunder or otherwise.

8.     <u>Adequate Protection</u>.  As adequate protection of the Prepetition Secured Lenders' interest in the Prepetition Collateral, the Prepetition Secured Lenders are entitled to receive an

#95712693v7

amount equal to the aggregate diminution in value (if any) of their interests in the Prepetition

Collateral (including Cash Collateral) from and after the Petition Date, calculated in accordance

with section 506(a) of the Bankruptcy Code, resulting from the use of Cash Collateral, the use,

sale, lease, consumption or disposition of Prepetition Collateral, and the imposition or enforcement

of the automatic stay pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code,

and/or the granting of a lien under section 364 of the Bankruptcy Code (collectively, the

"Diminution in Value").  In consideration of the foregoing and of the stipulations and consents set

forth herein, the Prepetition Secured Parties are hereby granted, from and after the Petition Date

and as a condition for use of Cash Collateral, adequate protection as follows (collectively, the

"Adequate Protection Obligations"):

(a)    Adequate Protection Liens. Effective and perfected upon the date of this

Final Order and without the necessity of the execution by the Debtor (or recordation or other filing)

of security agreements, control agreements, pledge agreements, financing statements, mortgages

or other similar documents, or the possession or control by the Agent of any property, the Agent

for the benefit of the Prepetition Secured Lenders is hereby granted continuing, valid, binding and

enforceable, fully perfected, non-avoidable additional and replacement security interest in and first

priority and senior liens on, and security interests in, all of the Debtor's assets to the same extent,

priority and enforceability held by the Agent for the benefit of the Prepetition Secured Lenders as

of the Petition Date, including first priority liens and security interests in and liens (the "Adequate

Protection Liens") on all of the Debtor's presently owned or hereinafter acquired property and

assets, whether such property and assets were acquired by the Debtor before or after the Petition

Date, of any kind or nature, and all post-petition proceeds, products, offspring or profits of the

Prepetition Collateral, excluding causes of action arising under any section of chapter 5 of the

21

Bankruptcy Code but including proceeds thereof (provided that such lien on proceeds shall be released automatically upon closing of a sale pursuant to the Sale Motion (a "Sale") to the extent that such Sale both (i) transfers the underlying claims arising under chapter 5 of the Bankruptcy Code to the Sale purchaser and (ii) includes substantially the same terms as set forth in Section 11.6 of the Asset Purchase Agreement (as amended)) provided however that the Adequate Protection Liens shall not attach to any collateral or cash deposits the Debtor has provided, or may subsequently provide, to the Electric Reliability Council of Texas ("ERCOT") for so long as such collateral is in the possession of ERCOT (all property within the scope of this paragraph 8(a) as subject to the Adequate Protection Liens being collectively referred to as the "Adequate Protection Collateral", together with the Cash Collateral and the Prepetition Collateral, the "Collateral"), to secure the Prepetition Obligations to the extent of any Diminution in Value of the Prepetition Secured Lenders' interests in the Prepetition Collateral from and after the Petition Date, subject only to and subordinate to (x) the Carve-Out, (y) any valid, perfected, unavoidable liens or security interests in existence as of the Petition Date, or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), and (z) any liens granted in connection with any DIP Financing approved by the Court, as and to the extent provided in the Plan Support Agreement, provided, however, in no event shall the proceeds from any DIP Financing constitute the Prepetition Secured Lenders' Prepetition Collateral, and the Adequate Protection Liens shall not extend to or encumber the proceeds of any DIP Financing.  Subject to Paragraphs 16 through 17 below, the Adequate Protection Liens shall be enforceable against the Debtor, its estate, and any successor thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing

(collectively, "Successor Cases"), or upon the dismissal of this Chapter 11 Case or any Successor Case. Except as otherwise expressly provided herein, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party except as provided herein, no matter when arising. The Adequate Protection Liens shall not be subject to sections 510, 549, 550 or 506(c) of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, or avoidance, for all purposes in this Chapter 11 Case and any Successor Cases.

(b)    Fees and Expenses. The Agent and the Ad Hoc Group shall receive from the Debtor reimbursement of all reasonable fees and expenses incurred or accrued, whether prior to or after the Petition Date, including and limited to the reasonable fees and disbursements of Davis Polk & Wardwell LLP and Richards, Layton & Finger P.A. as counsel to the Agent and the Ad Hoc Group, and regardless of whether such amounts are in excess of the amounts set forth in the Approved Budget. None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or comply with U.S. Trustee guidelines. The Debtor shall pay the fees and expenses provided for in this paragraph promptly (but no later than ten (10) days) after invoices for such fees and expenses shall have been submitted to counsel to the Debtor and copies thereof provided to the Office of the U.S. Trustee and counsel to any Committee ("Fee Notice Parties") provided that if prior to the expiration of such ten (10) day period either the Debtor or any of the Fee Notice Parties shall have objected in writing to such fees and expenses, the Debtor shall pay only the undisputed portion (if any) of such fees and expenses and such objection shall be resolved by the Bankruptcy Court upon notice and hearing and the fees

23

approved by the Bankruptcy Court shall be promptly paid in accordance with separate Court order. Invoices for professional fees shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional. The Agent and the Ad Hoc Group may redact the invoices transmitted to the Debtor and the other Fee Notice parties, and such transmission of the invoices, even if not redacted, shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  The U.S. Trustee reserves the right to seek to obtain unredacted copies of such invoices.

(c)  <u>Budget Compliance</u>.  The Debtor shall comply with the Approved Budget, subject to Permitted Variances, and all budget variance reporting requirements set forth herein.

(d)  <u>Adequate Protection Superpriority Claims</u>. The Prepetition Secured Parties are each hereby granted an allowed senior administrative expense claim (collectively, the "<u>Adequate Protection Superpriority Claims</u>") against the Debtor with priority over any and all administrative expenses against the Debtor of the kind specified in 503(b) and 507(b) of the Bankruptcy Code now existing or hereafter arising, in an amount equal to such Prepetition Secured Parties' claims for the Diminution in Value, payable from all Adequate Protection Collateral, each of which shall be *pari passu* with the other; <u>provided</u> <u>that</u> the Superpriority Claims shall be (x) subject only to the Carve-Out and (y) subordinate only to any DIP Lender's claim under any DIP Financing approved by the Court, as and to the extent provided in the Plan Support Agreement.

(e)  All Adequate Protection Liens granted by this Final Order are subject to being set aside, all Adequate Protection Superpriority Claims granted by this Final Order are subject to being

24

disallowed, and all adequate protection payments authorized by this Final Order are subject to disgorgement or recharacterization, if and to the extent the Court so rules if the underlying Prepetition Liens or claims arising from the Prepetition Obligations are successfully challenged pursuant to paragraphs 16 through 17 of this Order.

(f)     <u>DIP Financing upon Termination Event</u>.  If and to the extent the relief sought in the DIP Motion is granted, as additional adequate protection for the Prepetition Secured Parties' security interest in the Prepetition Collateral, upon the occurrence of a Termination Event, all of the DIP Lender's rights under the DIP Facility Documents (as defined in the DIP Financing Motion) and the DIP Order shall be automatically assigned to the Agent for the benefit of the Term Lenders without requiring any further actions by the DIP Lender, the Agent, the Prepetition Secured Lenders, or this Court.

(g)     <u>Limitation on the Use of Cash Collateral</u>.  Notwithstanding anything herein to the contrary, the Debtor shall not assert or prosecute, and no portion of the proceeds of the Collateral, including any Cash Collateral or the Carve-Out, and no disbursements set forth in the Budget, shall be used in connection with (a) preventing, hindering, or delaying any of the Prepetition Secured Parties' enforcement or realization upon any of the Collateral once a Termination Event has occurred and after the Remedies Notice Period has expired, (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations, the Collateral, or any other rights or interest of the Agent or the Prepetition Secured Lenders, (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any Prepetition Secured Party or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees (in their

#95712693v7

capacity as such), or any DIP Lender (solely in its capacity as such), or (d) paying any amount on account of any claims arising prior to the Petition Date or any non-ordinary course administrative claim unless such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget; provided, however, that up to $25,000 of Cash Collateral may be used to pay the allowed fees and expenses incurred solely by any Committee in investigating (but not commencing or prosecuting), the validity, enforceability, perfection, priority, or extent of the liens under the Prepetition Loan Documents (the "Committee Investigation Budget") prior to the Challenge Deadline; provided further, however, that any fees and expenses incurred by any Committee or any of its legal or financial advisors in connection with any such investigation in excess of the Committee Investigation Budget, and any fees or expenses incurred by any Committee or its legal or financial advisors in connection with commencing or prosecuting any Challenge, shall not be paid from the proceeds of the Collateral, including any Cash Collateral or the Carve-Out, and all rights of all parties in interest are reserved to challenge the status of such fees or expenses as allowed administrative expense claims for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

9.     Monitoring of Collateral. The Agent, the Consenting Lenders, and their respective consultants and advisors (including counsel to the Ad Hoc Group), upon reasonable notice, at reasonable times during normal business hours, shall be (i) given reasonable access to the Debtor's books, records, assets, and properties for purposes of monitoring the Debtor's businesses and the value of the Prepetition Collateral, (ii) permitted to reasonably consult with the Debtor's management and advisors on matters concerning the Debtor's business, financial condition, operations and assets, excluding any information for which confidentiality is owed to third parties pursuant to an agreement or similar obligation in existence as of the Petition Date or applicable

#95712693v7

law, information subject to attorney-client or similar privilege, or where such disclosure would not be permitted by any applicable requirement of law, solely to the extent the Debtor is unable, after commercially reasonable efforts, to obtain a waiver of such confidentiality requirement, and (iii) permitted to conduct, to the extent reasonable and necessary, and at the Debtor's cost and expense, field audits, collateral examinations and inventory appraisals in respect of the Prepetition Collateral, *provided* any expenses or costs incurred by the Debtor in connection with the activities described in this paragraph shall not be included as expenses for purposes of compliance with the Budget or the calculation of Permitted Variances.

10.     Limitation on Charging Expenses Against Collateral.  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Case or any future proceedings under the Bankruptcy Code shall be charged against or recovered from the Prepetition Collateral or the Cash Collateral pursuant to Bankruptcy Code sections 506(c), or 552(b) or any similar principle of law, or 105(a) of the Bankruptcy Code.

11.     Section 552(b) Waiver: The Prepetition Secured Lenders and the Agent shall be entitled to all rights and benefits of section 552(b) and the "equities of the case" exception shall not apply to any of the Prepetition Secured Lenders or the Agent with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the Cash Collateral.

12.     No Marshaling:  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Collateral, as the case may be, and proceeds or payments shall be received and applied in accordance with the Prepetition Loan Documents, notwithstanding any other agreement or provision to the contrary.

13.    <u>Reservation of Rights of the Prepetition Secured Parties</u>.  Notwithstanding any other provision hereof, this Final Order is without prejudice to, and does not constitute a waiver, expressly or implicitly, of the Agent's or any Prepetition Secured Lender's rights with respect to any person or entity or with respect to any other collateral owned or held by any person or entity. The rights of the Prepetition Secured Lenders and the Agent are expressly reserved and, except as provided expressly herein, entry of this Final Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of: (a) the Prepetition Secured Lenders' rights under any of the Prepetition Loan Documents; (b) the Prepetition Secured Lenders' rights to seek any other or supplemental relief in respect of the Debtor; (c) the Prepetition Secured Lenders' rights to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, without prejudice to the right of the Debtor or any other party in interest to contest such modification; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Lenders.

14.    <u>No Control</u>.  None of the Prepetition Secured Lenders or the Agent (solely in such capacity as a Prepetition Secured Lender or Agent, including in connection with the Plan Support Agreement) shall be deemed to control the Debtor or its properties or operations, have authority to determine the manner in which the Debtor's operations were or are conducted or be control persons or insiders of the Debtor by virtue of any of the actions taken with respect to, in connection with, related to, or arising from (x) the Prepetition Loan Documents or (y) this Final Order (including by permitting the Debtor to use the Prepetition Collateral (including the Cash Collateral) or in taking any other actions permitted by this Final Order); provided that the findings under clause (x) shall be subject to the challenge provisions described in Paragraphs 16 through 17 as to its binding effect on any Committee and any other party in interest in this Chapter 11 Case and

#95712693v7

any Successor Case, but shall be binding on the Debtor immediately upon entry of this Final Order. In permitting the Debtor to use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Final Order, the Prepetition Secured Parties shall have no liability to any third party shall not owe any fiduciary duty to any of the Debtor, its creditors, or its estates, and shall not be party to or be deemed to be party to a joint venture or partnership with the Debtor. Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Agent or the Prepetition Secured Lenders of any liability for any claims arising from the prepetition or postpetition activities of the Debtor and its affiliates (as defined in section 101(2) of the Bankruptcy Code).

15.    <u>Release</u>.  Subject to the challenge provisions described in Paragraphs 16 through 17 herein, with the sole exception of any claims arising under or in connection with the Plan Support Agreement, the Debtor, for itself and its affiliates (with respect to any non-Debtor affiliate, to the maximum extent provided under applicable law), hereby unconditionally, forever and irrevocably releases and acquits all former, current and future (a) Prepetition Secured Parties, in each case acting in such capacity as a Prepetition Secured Party, (b) affiliates of the Prepetition Secured Parties, and (c) officers, employees, directors, agents, representatives, owners, members, partners, principals, financial and other advisors and consultants, legal advisors, shareholders, managers, accountants, attorneys, and predecessors and successors in interest, in their capacity as such, of each of the Prepetition Secured Parties and each of their respective affiliates (collectively, the "<u>Releasees</u>") of and from any and all claims, counterclaims, demands, accounts, contracts, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, and judgments of every type, whether matured, unmatured,

#95712693v7

known, unknown, foreseen, unforeseen, liquidated, unliquidated, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the First Interim Order, the Second Interim Order, this Final Order, the Prepetition Loan Documents, the negotiation thereof and/or the transactions contemplated thereby, the obligations owing and made hereunder or thereunder, including, without limitation, (w) any lender liability, equitable subordination, or similar claims or defenses, (x) any and all claims and causes of action arising under the Bankruptcy Code, except for any Avoidance Action (as defined in the Asset Purchase Agreement), (y) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of any of the Prepetition Secured Parties, the Prepetition Loan Documents, or this Final Order, and (z) any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations, in each case that the Debtor had, now has or may have, or that their successors or assigns hereafter can or may have against any of the Releasees for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order. No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph or in the Prepetition Loan Documents to indemnify and/or hold harmless any Prepetition Secured Party, and any such defenses are hereby waived. The releases in this paragraph are in addition to and shall not limit any other releases, covenants not to sue, or waivers by the Debtor in favor of the Releasees.

16.    <u>Preservation of Challenge Rights</u>.  The stipulations and admissions contained in Paragraphs F through P of this Final Order (collectively, the "<u>Debtor's Stipulations</u>") shall be

#95712693v7

binding upon the Debtor, its affiliates, and any of its successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) in all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date. Notwithstanding anything herein to the contrary, any and all rights of any Committee or any other party in interest in the Chapter 11 Case to contest the extent, validity, priority or perfection of any and all liens of the Prepetition Secured Parties (other than Adequate Protection Liens), to contest the amount of the Prepetition Secured Parties' asserted claims, to seek the avoidance, recharacterization or subordination of the Agent's or the Prepetition Secured Lenders' claims or interests, to seek the avoidance of any transfer to the Agent or the Prepetition Secured Lenders or to otherwise contest the claims, rights and liens the Prepetition Secured Parties (each a "Challenge") is expressly preserved, provided that (i) any Challenge by a party in interest with standing must be commenced on or before the Challenge Deadline (as defined below) by commencing an adversary proceeding or contested matter and (ii) there is a final, non-appealable order entered in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is filed prior to the Challenge Deadline, or any adversary proceeding or contested matter that is filed prior to the Challenge Deadline does not result in a final, non-appealable order in favor of the plaintiff sustaining any such Challenge, without further order of this Court: (x) any and all such Challenges shall be deemed to be forever waived, released and barred, (y) the Debtor's agreements, acknowledgements and stipulations set forth in the Debtor's Stipulations above, shall be irrevocably binding upon all parties in interest, including, without limitation, any Committee, all creditors, interest holders, any other person acting on behalf of the Debtor's estate, all other parties in interest in this Chapter 11 Case and any Successor Case, and (z) the Prepetition

#95712693v7

Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by any party in interest, including any Committee, and any defenses, claims, causes of action, counterclaims, setoff, recoupment, reduction, subordination, recharacterization or avoidance, whether arising under the Bankruptcy Code or otherwise, by any party in interest against any Releasee arising out of or relating to the Prepetition Loan Documents, the Prepetition Obligations, or the Prepetition Liens shall be deemed forever waived, released and barred.  For the avoidance of doubt, if any Challenge is timely filed and a final, non-appealable order is entered in favor of the plaintiff sustaining any such Challenge, the Debtor's Stipulations in this Final Order shall nonetheless remain binding and preclusive on any Committee and any other person or entity, except to the extent that such stipulations and admissions were expressly challenged in an adversary proceeding or contested matter prior to the Challenge Deadline and sustained by the final, non-appealable order.  For the purposes of this Order, the "Challenge Deadline" shall mean the earlier of (1) the date of confirmation of a plan in this Chapter 11 Case; or (2) June 28, 2022, provided, however, that if the Chapter 11 Case converts to a Chapter 7 case, or if a Chapter 11 trustee is appointed, prior to the Challenge Deadline, the Challenge Deadline shall be extended for the Chapter 7 or Chapter 11 trustee to 45 days after their appointment, in all cases as such deadline may be extended in writing prior to the expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time by the Agent (acting at the direction of the Requisite Consenting Lenders) in its sole discretion.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee (if appointed) or any non-statutory committees appointed or formed in the Chapter 11 Case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate, and all rights to object to such standing are expressly reserved.  The filing of a motion seeking standing to file a Challenge

#95712693v7

before the Challenge Deadline, which attaches a pleading setting forth a Challenge, shall extend the Challenge Deadline with respect to that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.

17.     For the avoidance of doubt, any Chapter 7 or Chapter 11 trustee appointed or elected in this case shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Final Order.

18.     Carve-Out.  Notwithstanding anything to the contrary contained in this Final Order or other order of this Court, all liens and claims of, or granted to, the Agent and the Prepetition Secured Lenders in this Final Order shall be subject and subordinate to the payment, without duplication, of a carve-out (the "Carve-Out") for (i) all fees required to be paid to the Clerk of the Court and all statutory fees payable to the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6), plus interest at the statutory rate (collectively, the "Statutory Fees") (without regard to the Carve-Out Trigger Notice set forth in (iii) below, and regardless of amounts set forth in the Budget), (ii) all reasonable fees incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below) in an amount not to exceed $50,000, (iii) to the extent allowed at any time, whether by interim or final compensation order, procedural order or any other order of the Bankruptcy Court, all unpaid fees, costs, and expenses (the "Allowed Professional Fees") incurred or accrued by persons or firms retained by the Debtor pursuant to

33

section 327 or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and any Committee in the Chapter 11 Case pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following a delivery by the Agent (acting at the direction of the Requisite Consenting Lenders) of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, plus (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1 million plus the success fee (if earned) by Perella Weinberg Partners LP/Tudor Pickering Holt & Co in connection with the sale process (the "PWP Success Fee"), provided that except for the PWP Success Fee, no success, completion or similar fees shall be payable from the Carve-Out, incurred after the first business day following delivery by the Agent of a Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim or final compensation order, procedural order, or any other order of the Bankruptcy Court (the amount set forth in this clause (iv), the "Post Carve-Out Trigger Notice Cap").  Notwithstanding anything to the contrary in this Final Order, following the delivery of a Carve-Out Trigger Notice, any of the Statutory Fees, Allowed Professional Fees or other fees covered by this Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered cash that is not Cash Collateral (if any) and second, if there is no remaining unencumbered cash that is not Cash Collateral, from Cash Collateral. For the avoidance of doubt, notwithstanding anything to the contrary in this Final Order, the amount of Allowed Professional Fees due and payable by the Debtor or Statutory Fees under 28 U.S.C. § 1930(a) shall not be restricted or capped by the Budget or the Carve-Out.  Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (i) a Challenge, (ii) any attempts to modify any of the right granted to any of

the Prepetition Secured Parties hereunder, or (iii) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of the Court.

19.     Immediately upon the Debtor's receipt of a "Carve-Out Trigger Notice," the Debtor shall deposit first, from unencumbered cash that is not Cash Collateral (if any) and second, if there is no remaining unencumbered cash that is not Cash Collateral, from the Cash Collateral an amount equal to the Carve-Out (the "Carve-Out Amount") into a segregated account not subject to the control of either any DIP Lender or the Agent (the "Carve-Out Account"). For the purpose of this Order, a Carve-Out Trigger Notice is a written notice issued by the Agent (at the direction of Requisite Consenting Lenders) or by any DIP Lender by email (or other electronic means), sent following the Termination Date to the Debtor, Holland & Knight LLP as their lead restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event under this Order or under any DIP Financing stating that the Post Carve-Out Trigger Notice Cap has been invoked.

20.     Continuing Effect of Order.

(a)     If an order dismissing this Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full; and (y) this Court shall retain jurisdiction for the purposes of enforcing the Adequate Protection Liens.

(b)     The Agent and Prepetition Secured Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, to the

#95712693v7

extent applicable, and of this Order with respect to all uses of Cash Collateral, the Adequate Protection Obligations and Adequate Protection Liens.

21.    <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and the 507(b) Claims; (b) permit the Debtor to perform such acts as the Agent or Prepetition Secured Lenders each may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the Agent and Prepetition Secured Lenders under the terms of this Final Order; (d) authorize the Debtor to pay, and the Agent and Prepetition Secured Lenders to retain and apply, any payments made in accordance with the terms of this Final Order; (e) permit the delivery by the Agent of a Termination Event Notice or to request, and withhold consent to, the form of reporting required herein; and (f) permit the Agent to obtain and apply the L/C Deposit to the Debtor's reimbursement obligations in the event that either of both the HRCO Letter of Credit or the OneOK Letter of Credit are drawn.

22.    <u>Proofs of Claim</u>. Notwithstanding any order entered by the Bankruptcy Court in relation to the establishment of a bar date in the Chapter 11 Case or any Successor Case to the contrary, the Agent and the Prepetition Secured Lenders shall not be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claim allowed herein. The statements of claim in respect of the Prepetition Obligations set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim Hearing and the Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.    However, and notwithstanding any order entered by the Court in relation to the

#95712693v7

establishment of a bar date in the Chapter 11 Case or any Successor Case to the contrary, the Agent, on behalf of itself and the Prepetition Secured Parties, and each other Prepetition Secured Party (as applicable) is hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim (including, for the avoidance of doubt, a single master proof of claim on behalf of the relevant Prepetition Secured Parties) in the Chapter 11 Case or any Successor Case for any and all of their respective claims arising under the applicable Prepetition Loan Documents and hereunder.  The provisions set forth in this paragraph and any such proof of claim filed in accordance herewith are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in this Chapter 11 Case.

23.    <u>No Waivers</u>. Notwithstanding any provision in this Final Order to the contrary, any delay or failure by the Prepetition Secured Parties to exercise their rights and remedies under this Final Order, the Prepetition Loan Documents, applicable law, as applicable, shall not constitute a waiver of any of the Prepetition Secured Parties' rights hereunder, thereunder or otherwise, and no such waiver shall be deemed to have occurred unless such waiver is made pursuant to a written instrument executed in accordance with the term of the applicable document.

24.    <u>No Third Party Rights</u>. Except as expressly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

25.    <u>Certain Taxing Authorities</u>. Notwithstanding any other provisions included in the Interim Order or this Final Order to the contrary, to the extent Ector County Appraisal District (the "<u>Ector CAD</u>") has valid, binding, perfected, enforceable, and non-avoidable liens for local ad

valorem taxes on any Adequate Protection Collateral that under the applicable state statute are granted priority over a prior perfected security interest or lien, the Adequate Protection Liens granted under the Interim Order and this Final Order on such Adequate Protection Collateral shall be subject to such statutory ad valorem tax liens, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by Ector CAD are fully preserved.   In the event of a sale of the Debtor's assets subject to such ad valorem tax liens, the priority of the Ector CAD tax liens shall be preserved.

26.    <u>Binding Effect of Final Order</u>.  Immediately upon entry by the Bankruptcy Court (notwithstanding any applicable law or rule to the contrary), (i) the Adequate Protection Obligations shall constitute valid, binding and non-avoidable obligations of the Debtor, enforceable against the Debtor and its estate and any successor thereto, including any trustee appointed or elected in the Chapter 11 Case or in any Successor Case, in accordance with the terms of this Final Order and (ii) the terms and provisions of this Final Order, including all findings herein, shall become valid and binding upon all parties in interest in the Chapter 11 Case, including, without limitation, the Agent, the Prepetition Secured Lenders, any Committee, the Debtor, all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 Case or any Successor Case, and shall inure to the benefit of the Prepetition Secured Parties and the Debtor and their respective successors and assigns, whether in the Chapter 11 Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case; <u>provided</u> that none of the Prepetition Secured Parties shall have any obligation to permit the use of the Prepetition Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of the Debtor.  Any payment to be made by the Debtor pursuant to the authority granted

38

by any order entered by the Court in this case (including any "First Day" order) shall be subject to the applicable line item expenditures set forth in the Approved Budget and the cash collateral authorization requirements imposed on the Debtor under this Final Order, unless such other order expressly provides that it controls over this Final Order. The rights and benefits in favor of the Agent and the Prepetition Secured Lenders hereunder shall survive the termination of the Debtor's right to use Cash Collateral in accordance with the terms hereof.

27.    <u>Controlling Effect of Final Order</u>. To the extent any provision of this Final Order conflicts, or is inconsistent, with any provision of the Motion, the Interim Order, the Second Interim Order, or any prepetition agreement, the provisions of this Final Order shall control to the extent of such conflict or inconsistency.

28.    <u>Effect of this Final Order</u>. This Final Order shall take effect and be enforceable immediately upon issuance.

29.    <u>Retention of Jurisdiction</u>. This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

**Dated: June 3rd, 2022**
**Wilmington, Delaware**

JOHN T. DORSEY
**UNITED STATES BANKRUPTCY JUDGE**

#95712693v7