**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ECTOR COUNTY ENERGY CENTER LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10320 (JTD)<br><br>**Re: Docket No. —141** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR**
**TO OBTAIN POST-PETITION FINANCING SECURED BY PRIMING**
**LIENS, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE**
**PROTECTION,**
**(IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Ector County Energy Center LLC, the debtor and debtor-in-possession ("ECEC"

or the "Debtor") in the above captioned chapter 11 case ("Chapter 11 Case"), having filed the

*Motion of the Debtor for Entry of a Final Order (I) Authorizing the Debtor to Obtain*

*Post-Petition Financing Secured by Priming Liens, (II) Granting Liens and Providing*

*Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying*

*the Automatic Stay, and (V) Granting Related Relief* (the "Motion"), on —————May 10,

2022 [ECFDocket No. ——141], requesting, pursuant to sections 105(a), 361, 362, 363, and 364

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002 and 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), following a final hearing (the

---

[1]  The last four digits of the Debtor's federal tax identification are 6852. The Debtor's mailing address is One South Wacker Drive, Suite 1900, Chicago, IL, 60606, and the Debtor has a principal place of business at 8200 OB Holt Road, Goldsmith, Ector County, Texas, 79761. More information about the Debtor and this case is available on the website maintained by Donlin, Recano & Company, Inc., the Debtor's proposed claims and noticing agent, at www.donlinrecano.com/ecec, or can be requested by e-mail at ececinfo@donlinrecano.com.

"<u>Final Hearing</u>"), entry of a final order in the form attached to the Motion as Exhibit A (the

"<u>Final Order</u>"), providing the following relief:[2]

(i)     authorizing the Debtor to obtain secured priming and superpriority post-petition financing to be funded by Invenergy Thermal Operating I LLC ("<u>ITOI</u>" or the "<u>DIP Lender</u>"), the indirect parent of the Debtor, pursuant to a multi-draw term loan in an aggregate principal amount of up to $5 million (the "<u>DIP Facility</u>");

(ii)    authorizing the Debtor to execute, enter into, and perform under that certain *Superpriority Secured Debtor-in-Possession Credit and Security Agreement* by and among the Debtor as Borrower and ITOI as Lender, substantially in the form attached hereto as **Exhibit A** (as it may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "<u>DIP Credit Agreement</u>") and any other related documentation that may be reasonably necessary, desirable, or required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the Lender, in each case, as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof (collectively, the "<u>DIP Facility Documents</u>") and to perform such other acts as may be reasonably necessary, desirable, or appropriate in connection with the DIP Facility Documents;

(iii)   granting ITOI (a) the DIP Liens (as defined below) on substantially all of the assets of the Debtor pursuant to section 364(c)(3) and (d) of the Bankruptcy Code, which DIP Liens shall be junior, subordinate, and subject in all respects only to the First Priority Base Distribution, the Revolving Lender Payment Claim, and the Adequate Protection Claims (each as defined below) and (b) pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative claim, except that such administrative claim shall be junior in right of payment and priority to the First Priority Base Distribution, the Revolving Lender Payment Claim, and the Adequate Protection Claims;

(iv)    authorizing the Debtor to pay all principal, interest, fees, costs, expenses, and other amounts payable pursuant to the DIP Facility Documents as such become due and payable; and

(v)     authorizing the Debtor to incur one or more draws on the DIP Facility of up to $5 million, pursuant to the terms of the DIP Facility Documents;

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

#157108997_v11
#158236276_v1

all as more fully set forth in the Motion and the *Declaration of John Baumgartner, Chief Restructuring Officer, in Support of Chapter 11 Petition, First Day Motions, and Related Relief* [Docket No. 2] (the "<u>First Day Declaration</u>"); and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012*; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the First Day Declaration; and the Court having found that the relief requested in the Motion is necessary to avoid irreparable harm to the Debtor and its estate, as contemplated by Bankruptcy Rules 4001 and 6003; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor and its estate, and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given under the circumstances and that no other or further notice is necessary for the relief requested in the Motion; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before the Court in connection with the Motion, now therefor

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

---

[3]    Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

#157108997_v11
#158236276_v1

A. <u>Petition Date</u>. On April 11, 2022 (the "<u>Petition Date</u>"), the Debtor filed its voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"), commencing this chapter 11 case (this "<u>Chapter 11 Case</u>").

B. <u>Debtor in Possession</u>. The Debtor is continuing in the management and operation of its business and property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D. <u>Committee Formation</u>. As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") has not yet appointed any official committee in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "<u>Committee</u>").

E. <u>Findings Regarding Post-Petition Financing</u>.

(i) <u>Request for Post-Petition Financing</u>. The Debtor seeks authority to enter into the DIP Facility on the terms described herein and in the DIP Facility Documents to administer their chapter 11 cases and fund their operations through the completion of a sale of substantially all of the Debtor's assets (a "<u>Sale Transaction</u>").

(ii) <u>DIP Lender</u>. The DIP Lender, as fully disclosed by the Debtor, is the indirect parent of the Debtor and the borrower under the Prepetition Credit Facility (defined below). The Debtor is a guarantor of the DIP Lender's obligations under the Prepetition Credit

4

Facility. Substantially all of the Debtor's assets are subject to senior liens securing the Debtor's guaranty obligations under the Prepetition Credit Facility.

(iii)    <u>Priming of the Prepetition Liens</u>. The priming of liens to the extent provided herein under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below will enable the Debtor to obtain the loans under the DIP Facility (the "<u>DIP Loans</u>") and to continue to operate its business for the benefit of its estate and creditors. The Prepetition Secured Parties (as defined below) have consented to such priming of liens subject to the terms and conditions of this Final Order.

(iv)    <u>Need for Post-petition Financing</u>. The Debtor has a critical need to obtain post-petition financing pursuant to the DIP Facility to, among other things, address operating costs, administrative expenses of this Chapter 11 Case, and working capital needs. The ability of the Debtor to meet these needs requires the availability of working capital from the DIP Facility. The Debtor projects that it will not have sufficient available sources of working capital and financing to meet these needs through the anticipated July 31, 2022 closing of the Sale Transaction without the ability to borrow under the DIP Facility.

(v)    <u>No Credit Available on More Favorable Terms</u>. As set forth in the Motion and in the First Day Declaration, the DIP Facility is the most favorable source of debtor-in-possession financing available to the Debtor. Given its current financial condition, financing arrangements, and capital structure, the Debtor has been and continues to be unable to obtain financing from sources other than the DIP Lender on terms more favorable than the terms of the DIP Facility. The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor has also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind

#157108997_v11
#158236276_v1

specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting the Lender: (a) perfected security interests in and DIP Liens on (each as provided herein) the Debtor's existing and after-acquired assets with the priorities set forth herein and (b) superpriority claims with the priorities set forth herein.

F.    Use of Proceeds of the DIP Facility. As a condition to the Debtor's entry into the DIP Facility Documents and the extension of credit under the DIP Facility, the DIP Lender and the Prepetition Secured Lenders require, and the Debtor has agreed, that proceeds of the DIP Facility shall be used solely in a manner consistent with the terms and conditions of this Final Order and the DIP Facility Documents.

G.    Good Faith.

(i)    The DIP Lender has indicated a willingness to provide financing to the Debtor subject to: (a) entry of this Final Order; (b) Court approval of the terms and conditions of the DIP Facility and the DIP Facility Documents; (c) satisfaction or waiver of the closing conditions set forth in the DIP Facility Documents; and (d) findings by this Court that the DIP Facility is compliant with the provisions of the Bankruptcy Code including Section 364 of the Bankruptcy Code, that the DIP Lender is extending credit to the Debtor pursuant to the DIP Facility Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Facility Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

#157108997_v11
#158236276_v1

(ii)    Based on the Motion and the First Day Declaration, and on the record presented to the Court at the Final Hearing, the terms and conditions of the DIP Facility, the DIP Facility Documents, and the fees paid and to be paid thereunder to the DIP Lender, are fair, reasonable, and the best available to the Debtor under the circumstances, are ordinary and appropriate for secured post-petition financing to debtors in possession, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. Entry of this Final Order is in the best interests of the Debtor and its estate. The terms and conditions of the DIP Facility were negotiated in good faith and at arms' length among the Debtor, the DIP Lender and the Prepetition Secured Lenders, with the assistance and counsel of their respective advisors. Credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Lender, within the meaning of section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal or modification of this Final Order or any other order.

H.    <u>Notice</u>. Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtor, whether by facsimile, electronic mail, overnight courier or hand delivery, on [    ]May 10, 2022 [Docket No. 151], to certain parties in interest, including: (i) the United States Trustee for the District of Delaware; (ii) the parties appearing on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) counsel to the Agent and Ad Hoc Group, Davis Polk & Wardwell LLP, Attn: Brian M. Resnick, Esq., and Joshua Sturm, Esq., 450 Lexington Ave., New York, NY 10017 (brian.resnick@davispolk.com; joshua.sturm@davispolk.com), and Richards, Layton & Finger, P.A., Attn: Mark D Collins, Esq., 920 N. King St., Wilmington, DE 19801 (collins@rlf.com); (iv) counsel to ITOI, Sullivan Hazeltine Allinson LLC, Attn: William D. Sullivan, Esq., 919 N.

#157108997_v11
#158236276_v1

Market St., Ste. 420 (bsullivan@sha-llc.com); (v) all known parties, to the best of the Debtor's knowledge, information, and belief, asserting a lien against, or other interest in, the Prepetition Collateral; (vi) the Electric Reliability Council of Texas; (vii) the Internal Revenue Service and all state taxing authorities in the jurisdictions in which the Debtor has tax obligations; (viii) the U.S. Attorney's Office; (ix) the Delaware Attorney General; (x) all federal or state regulatory authorities governing the Debtor's industry (including the Public Utility Commission of Texas and the Environmental Protection Agency and any state environmental regulatory agencies in the states in which the Debtor does business); (xi) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m). No other notice need be provided for entry of this Final Order.

I.    <u>The Debtor's Prepetition Secured Claim and Guarantee</u>. The Debtor stipulates that pursuant to that certain Amended and Restated Credit and Guaranty Agreement, dated as of August 22, 2019 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "<u>Prepetition Credit Agreement</u>" and, together the other "Loan Documents" (as defined in the Prepetition Credit Agreement, the "<u>Prepetition Loan Documents</u>"), by and among ITOI, as Borrower, the Debtor and certain of its non-debtor affiliates, as Subsidiary Guarantors (as defined in the Prepetition Credit Agreement), each of the banks and other financial institutions party thereto as Lenders (the "<u>Prepetition Secured Lenders</u>"), the financial institutions from time to time parties thereto as issuing banks in respect of letters of credit defined under in the Prepetition Credit Agreement as "Revolving Letters of Credit" (the "<u>Revolving LC Issuers</u>"), Credit Suisse AG, Cayman Islands, as administrative agent and as collateral agent (the "<u>Agent</u>"), and the other financial institutions party thereto from time to time (together with the Prepetition Secured Lenders, the Revolving LC Issuers, and the

#157108997_v11
#158236276_v1

Agent, the "Prepetition Secured Parties"), the Debtor provided security for certain of its prepayment obligations and an unconditional guaranty of due and punctual payment in full of all Secured Obligations (as defined in the Prepetition Credit Agreement) other than, Excluded Swap Obligations (as defined in the Prepetition Credit Agreement), with such Secured Obligations defined in the Prepetition Credit Agreement as the Guaranteed Obligations.

J.      The Debtor's Pledge of Its Assets. The Debtor stipulates that:

(i)      The Debtor secured its prepayment obligation and guaranty of the Guaranteed Obligations through a separately executed Pledge and Security Agreement dated August 28, 2018 ("Security Agreement," and included in the Prepetition Loan Documents, defined above), granting a first-priority security interest in and lien upon (the "Prepetition Liens") the Debtor's real and personal property assets and the proceeds thereof ( the "Prepetition Collateral"). The Agent, on behalf of the Prepetition Secured Lenders, perfected the Prepetition Secured Lenders' security interests in the Debtor-owned personalty constituting Prepetition Collateral through the filing of UCC-1 financing statements with the Office of the Secretary of State for Delaware and a Transmission Utility Financing Statement with the Office of the Texas Secretary of State.

(ii)      The Prepetition Secured Lenders' security interests in the Debtor's cash and cash equivalents were perfected under a Depositary Agreement, dated as of August 28, 2018 (as amended, the "Depositary Agreement"), among ITOI, the Subsidiary Guarantors, the Agent, and The Bank of New York Mellon, as the depositary bank (the "Depositary Bank"). The Depositary Agreement provides the Agent, on behalf of the Prepetition Secured Lenders, a first priority lien and control over the Debtor's right, title and interest in, funds on deposit with the Depositary Bank in various "Collateral Accounts," maintained by the Debtor in connection with

#157108997_v11
#158236276_v1

its business operations in the ordinary course. The Collateral Accounts maintained with the Depository Bank include an Ector Revenue Account, which receives all income and receipts generated through operation of the Power Plant, and an Ector Operating Account, from which the Debtor's operating and maintenance expenses are paid on a monthly basis (collectively, the "Account Collateral" and included in the definition of "Prepetition Collateral").

(iii)    The Debtor's obligations to the Prepetition Secured Lenders are also secured by a mortgage granted against the Debtor's owned real estate assets and improvements and easement rights pertaining to the Power Plant property in Ector County, Texas, through a *Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing*, as amended on August 22, 2019, recorded by the Collateral Agent with the Public Records Office of Ector County, Texas.

(iv)    As security for the Debtor's obligation to reimburse those Prepetition Secured Lenders that have acted as a Revolving LC Issuer as that term is defined in the Prepetition Credit Agreement ("LC Issuer") in the event of a draw on posted letters of credit, the Debtor has deposited funds in a segregated cash collateral account held in the name of the Agent at The Bank of New York Mellon as depositary bank (the "L/C Deposit") to secure its contingent liability in the event of a draw on either or both the $7 million letter of credit posted in connection with the HRCO in favor of Direct Energy Business Marketing, LLC ("HRCO Letter of Credit") or the $225,000 letter of credit posted in favor of OneOK Texas Gas Storage, LLC (the "OneOK Letter of Credit").

K.    Plan Support Agreement. The Debtor represents and stipulates that the Debtor, the Agent, the Prepetition Secured Lenders holding no less than 66.67% of the aggregate outstanding balance as of the Petition Date of the term loans outstanding under the Prepetition Credit

Agreement (the "Consenting Prepetition Term Lenders") and Prepetition Secured Lenders holding 100% of the Revolving Loan Exposure (as defined in the Prepetition Credit Agreement) as of the Petition Date under the Prepetition Credit Agreement (the "Consenting Prepetition Revolving Lenders" and, together with the Consenting Prepetition Term Lenders, the "Consenting Prepetition Lenders") have entered a Plan Support Agreement dated as of April 4, 2022 (the "Plan Support Agreement" or the "PSA") setting forth the terms under which the Debtor will seek, and the Consenting Prepetition Lenders will support, *inter alia*, authority to use Cash Collateral, approval of the DIP Financing and confirmation of a liquidating chapter 11 plan. A copy of the Plan Support Agreement has been filed as Exhibit A to the First Day Declaration.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      Motion Granted. The Motion is **GRANTED** on a final basis, as and to the extent set forth herein.

2.      Objections Overruled. Any objections with respect to the entry of this Final Order not resolved or otherwise withdrawn are hereby **OVERRULED**.

3.       Authorization of the DIP Facility. The DIP Facility is hereby approved. The Debtor is expressly and immediately authorized and empowered to execute and deliver the DIP Facility Documents, and to incur and to perform the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this Final Order and the DIP Facility Documents, including to deliver all DIP Facility Documents which may be reasonably required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the

11

DIP Liens described in and provided for by this Final Order and the DIP Facility Documents. The Debtor is hereby authorized and directed to pay, in accordance with and to the extent required by the DIP Facility Documents and this Final Order, any principal, interest, fees, expenses, and other amounts described in the DIP Facility Documents as such become due and payable and without need to obtain further Court approval. Under the terms of the DIP Facility Documents, no such payments come due until the earliest of (i) the effective date of a confirmed chapter 11 plan, (ii) the date that is eight months following the entry of a̶this Final Order or (iii) the date upon which the obligations are accelerated due to the occurrence of an Event of Default by the Debtor under the terms of the DIP Facility Documents.

4.      DIP Obligations. Upon execution and delivery, the DIP Facility Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms. For the purposes hereof, the term "DIP Obligations" means all "Obligations" as defined in the DIP Credit Agreement, and shall include, without limitation, principal, interest, all loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees and any administrative agent fees, costs, expenses, and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other amounts due or payable under the DIP Facility Documents. The DIP Facility Documents and this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including without limitation, any trustee appointed in this Chapter 11 Case, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (a "Successor Case"). No obligation, payment, transfer, or grant of collateral

security hereunder to the DIP Lender or under the DIP Facility Documents (including any DIP

Obligation or DIP Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under

the Bankruptcy Code or under any applicable law (including, without limitation, under sections

502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common

law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization,

subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense,

or any other challenge under the Bankruptcy Code or any applicable law or regulation by any

person or entity.

     5.    <u>DIP Liens</u>.

     (i)    To secure the DIP Obligations, upon entry of this Final Order, pursuant to

sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby

granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly

perfected post-petition security interests in and liens (collectively, the "<u>DIP Liens</u>") on all DIP

Collateral as collateral security for the prompt and complete performance and payment when due

(whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations.

     (ii)    The term "<u>DIP Collateral</u>" shall mean "Collateral" as defined in the DIP

Credit Agreement and shall include, without limitation, all prepetition and post-petition assets

and properties (real and personal) of the Debtor, whether now owned or hereafter acquired by the

Debtor, and wherever located, including, without limitation, all cash and cash equivalents of the

Debtor wherever located (other than cash deposits funded by the Debtor for the benefit of certain

of the Debtor's suppliers and regulatory agencies prior to the Petition Date in the ordinary course

of business, or any cash deposits posted during the pendency of this case as set forth in the

#157108997_v11
#158236276_v1

Budget, including, but not limited to, cash to be segregated for the benefit of the Debtor's utility service providers in accordance with subsequent Court orders, retainers held by the Debtor's professionals, and the LC Deposit, defined below, which LC Deposit constitutes the cash collateral of the Revolving LC Issuers, exclusively) (the "Excluded Cash Deposits")) including in any segregated deposit account subject to a control agreement in favor of the DIP Lender; provided, however, that the DIP Collateral shall not include any claims and causes of action arising under chapter 5 of the Bankruptcy Code or any proceeds thereof.

(iii)    To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof to the extent comprising DIP Collateral, shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Lender in accordance with the terms of the DIP Facility Documents and this Final Order.

6.      DIP Lien Priority. The DIP Liens securing the DIP Obligations are valid, automatically and properly perfected, non-avoidable, liens on all DIP Collateral (subject to the exclusions therefrom set forth herein and in the DIP Credit Agreement, if any) and shall constitute a continuing security interest in and lien of the DIP Lender in the DIP Collateral subject to the Carve-Out (as defined below) and junior and subordinate only to:

(i)      the liens and claims of the Prepetition Term Lenders to the extent of $55 million (the "First Priority Base Distribution");

14

(ii)     any interest of the Prepetition Secured Lenders in, and right to draw from, the LC Deposits in order to be reimbursed for any draw on the Debtor's prepetition letters of credit with respect to the HRCO Letter of Credit or the OneOK Letter of Credit (the "Revolving Lender Payment Claim");

(iii)    a lien on the Debtor's post-petition assets and superpriority claims in favor of the Agent for the benefit of the Prepetition Secured Lenders to the same extent and with the same priority as was held by the Prepetition Secured Lenders in the Debtor's prepetition assets as of the Petition Date for any Diminution in Value (as defined in paragraph 8 below) of the Prepetition Secured Lenders' interest in the Cash Collateral (defined below) granted pursuant to this order or any other order of the Bankruptcy Court (the "Adequate Protection Claims") provided however that, for purposes of this subparagraph 6(ii), the Diminution in Value of the Prepetition Secured Lenders' interest in the Cash Collateral shall not include any Diminution in Value resulting from the granting of liens to the DIP Lender pursuant to the DIP Credit Agreement and this Final Order;

(iv)    any valid, perfected, unavoidable liens or security interests in existence as of the Petition Date (other than the liens of the Prepetition Term Lenders, which have priority only to the extent of the First Priority Base Distribution as referenced above), or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b); and

(v)     any valid, binding, perfected, enforceable, and non-avoidable liens held by Ector County Appraisal District (the "Ector CAD") for local ad valorem taxes that under the applicable state statute are granted priority over a prior perfected

#157108997_v11
#158236276_v1

security interest or lien, provided, however, that all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by Ector CAD are fully preserved.

7.  <u>DIP Superpriority Claim</u>. Upon entry of this Final Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim with respect to all DIP Obligations (the "<u>DIP Superpriority Claim</u>"): (a) junior in right of payment and priority to the amount of the First Priority Base Distribution, the Revolving Lender Payment Claim and Adequate Protection Claims, and except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Chapter 11 Case and any Successor Cases, at any time existing or arising, of the kind or nature specified in Bankruptcy Code sections 503(b) and 507(b), including to the extent allowed under the Bankruptcy Code, administrative expenses of the kinds specified in or ordered pursuant to sections 328, 330, 331, 364, 503(a), 503(b), 506(c), 507(a) (other than section 507(a)(1)), 507(b), 546(c), 546(d), 1113, and 1114, and any other provision of the Bankruptcy Code, to the extent provided under section 364(c)(1) of the Bankruptcy Code; and (b) except as set forth herein, which shall at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by Bankruptcy law and other applicable law. The DIP Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be payable from and have recourse to all DIP Collateral, and shall be subject and subordinate to the Carve-Out.

8.  <u>Adequate Protection</u>. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(l), and 507 of the Bankruptcy Code, to adequate protection of

16

their respective interests in the Prepetition Collateral, for and equal in amount to the aggregate diminution in the value, if any, of the Prepetition Secured Parties' security interests in the Prepetition Collateral from and after the Petition Date, which diminution in value is as a result of, or arises from, or is attributable to, the imposition of the automatic stay, or the use, sale or lease of such pre-petition collateral, or the grant of a lien under section 364 of the Bankruptcy Code ("Diminution in Value"). As adequate protection for the Prepetition Secured Parties' security interests in the Prepetition Collateral, the Prepetition Secured Lenders are entitled to the rights and liens provided in paragraph 8 of the *Second Interim Order Authorizing the Debtor to (I) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, (III) Modifying Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Second Interim Cash Collateral Order") or any subsequent order that amends or supersedes the Second Interim Cash Collateral Order (the "Cash Collateral Order"). As adequate protection for the Prepetition Secured Parties' security interests in the Prepetition Collateral, in addition to the Adequate Protection Claims and the Adequate Protection Liens (as defined in the Second Interim Cash Collateral Order), upon the occurrence of a DIP Termination Event (as defined below), all of the DIP Lender's rights under the DIP Facility Documents shall be automatically assigned to the Prepetition Term Lenders (or, with the consent of the Requisite Consenting Prepetition Lenders (as defined below), to the Agent for the benefit of the Prepetition Term Lenders), without requiring any further actions by the Agent, the Prepetition Term Lenders, or this Court. If the underlying Prepetition Liens or claims arising from the Prepetition Obligations are successfully challenged ~~pursuant to paragraphs 22 through 23 of this Order or~~ pursuant to the challenge provisions of any Cash Collateral Order entered by this Court, all Adequate Protection Liens granted by this Final Order are subject to being set aside, all Adequate Protection Claims

17

granted by this Final Order are subject to being disallowed, and all adequate protection payments authorized by this Final Order are subject to disgorgement or recharacterization, if, and to the extent that, the Court so rules. Notwithstanding anything to the contrary in either this Final Order or any of the DIP Facility Documents, the Adequate Protection Liens granted to any party shall not attach to any collateral the Debtor has provided, or may subsequently provide, to the Electric Reliability Council of Texas ("ERCOT") as long as such collateral is in the possession of ERCOT.

9.     <u>No Obligation to Extend Credit</u>. The DIP Lender shall have no obligation to make any loan or advance under the DIP Facility Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Facility Documents and this Final Order have been satisfied in full or waived by the DIP Lender, as applicable, and in accordance with the terms of the DIP Credit Agreement.

10.    <u>Use of Proceeds of DIP Facility</u>. From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility for the payment of costs, expenses, and working capital needs of the Debtor during the Chapter 11 Case in accordance with the Budget (defined below), including, but not limited to, those costs identified in the Budget ~~as~~ at the line-item labeled "Commodity Fuel (Gas) Expense," to pay the Statutory Fees (defined below), which shall not be subject to any Budget, and for such other purposes specifically set forth in this Final Order or any subsequent order on the Motion and the DIP Facility Documents; <u>provided</u> that such use is in compliance with the terms and conditions in this Final Order, any subsequent order on the Motion, and the DIP Facility Documents, and in accordance with the budget (the "<u>Budget</u>") with respect to the Debtor's use of its cash and cash equivalents that are subject to the

liens of the Prepetition Secured Parties (the "Cash Collateral"), as such use is authorized pursuant to the Cash Collateral Order.

11.    Amendment of the DIP Facility Documents. The DIP Facility Documents may from time to time be amended, modified, or supplemented by the parties thereto with the consent of the Consenting Prepetition Lenders holding more than 50% of the aggregate principal amount of the outstanding loans held by Consenting Prepetition Lenders under the Prepetition Credit Agreement (the "Requisite Consenting Prepetition Lenders"), which consent shall not be unreasonably withheld, and without further order of the Court if: (i) the amendment, modification, or supplement is in accordance with the DIP Facility Documents; (ii) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to the Agent and the Ad Hoc Group (as defined in the Plan Support Agreement), counsel to any Committee, and the U.S. Trustee (together, the "Amendment Notice Parties"); and (iii) the amendment, modification, or supplement is filed with the Court; provided, however, that the approval of the Court, will be necessary to effectuate any material amendment, modification, or supplement and provided further that any such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard. Any modifications to the Budget must be filed with the Court.

12.    Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (i) permit the Debtor to grant the DIP Liens and the DIP Superpriority Claim; (ii) permit the Debtor to perform such acts as the DIP Lender may reasonably request to assure the perfection and priority of the liens granted herein; (iii) permit the Debtor to incur all liabilities and obligations to the DIP Lender under the

#157108997_v11
#158236276_v1

DIP Facility Documents, the DIP Facility, and this Final Order; (iv) authorize the Debtor to pay, and the DIP Lender to retain and apply, payments made in accordance with the terms of this Final Order; and upon the occurrence of an Event of Default, to permit the Agent and Prepetition Term Lenders to enforce the DIP Facility Documents upon such Event of Default without need for further order of this Court.

13.     Automatic Perfection of DIP Liens. This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, filing of Uniform Commercial Code financing statements, mortgages, assignments, notices of lien and similar documents, and entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized to execute and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, notices and other documents as the DIP Lender may reasonably request. The DIP Lender, in its sole discretion, may file a photocopy of

#157108997_v11
#158236276_v1

this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

14.     <u>Proceeds of Subsequent Financing</u>. If the Debtor, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in this Chapter 11 Case or any Successor Case shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) or in violation of this Final Order or the DIP Facility Documents at any time prior to the indefeasible repayment in full and in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtor and its estate, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or indebtedness shall immediately be turned over to the DIP Lender to be applied in accordance with this Final Order and the DIP Facility Documents until the DIP Obligations are paid in full.

15.     <u>DIP Termination Event</u>. Each of the following occurrences or events constitute a termination event under the DIP Credit Agreement (each, a "<u>DIP Termination Event</u>", and the date upon which such DIP Termination Event occurs, the "<u>DIP Termination Date</u>"), notice of which shall promptly be provided to counsel to the Debtor, the Agent, any Committee, and the U.S. Trustee: (i) breach of any provision or representation contained in the Cash Collateral Order; (ii) appointment of a chapter 11 trustee; (iii) conversion of the Chapter 11 Case to a case pursuant to chapter 7 of the Bankruptcy Code; (iv) dismissal of the Chapter 11 Case; (v) appointment of an examiner; (vi) litigation or adversary proceeding against the Prepetition Secured Lenders by the Debtor; (vii) the Debtor's incurring of debt that is senior to or *pari passu* with (a) the term loans extended pursuant to the Prepetition Credit Agreement and/or (b) the

loans extended pursuant to the DIP Credit Agreement as to either or both payment or lien priority (other than with respect to the protections granted to a stalking-horse bidder in connection with the Sale Transaction, the Cash Collateral Order, the DIP Financing as provided herein, or as otherwise agreed to by the DIP Lender and the Requisite Consenting Prepetition Lenders, in writing, which writing may be delivered via email by counsel); (viii) breach of any representation or provision contained in the PSA, unless waived by the Requisite Consenting Prepetition Lenders in writing in their sole and absolute discretion; or (ix) the occurrence of any other Event of Default pursuant to DIP Facility Documents (unless waived by the DIP Lender with the consent of the Requisite Consenting Prepetition Lenders).

16.    Carve-Out.[4]

(i)    Notwithstanding anything to the contrary contained in this Final Order or other order of this Court, the liens and claims of, or granted to, the DIP Lender, the Agent and the Prepetition Secured Lenders in this Final Order, including the Adequate Protection Liens, the Prepetition Liens, and those granted pursuant to section 507(b) of the Bankruptcy Code, shall be subject and subordinate to the payment, without duplication, of a carve-out (the "Carve-Out") from claims pursuant to section 507(b) of the Bankruptcy Code, the Adequate Protection Liens and the Prepetition Liens, in an amount equal to the sum of (a) all fees required to be paid to the Clerk of the Court and statutory fees payable to the United States Trustee, pursuant to 28 U.S.C. § 1930(a)(6), plus interest at the statutory rate (collectively, the "Statutory Fees"), without regard to the notice set forth in clause (d) below, and regardless of amounts set forth in the Budget), (b) all reasonable fees incurred by a trustee under section 726(b) of the Bankruptcy Code, (without

---

[4]    The Carve-Out provisions of this Final Order are intended to be read *in pari materia* with the Carve-Out provisions of the Cash Collateral Order and contemplate a single Carve-Out in this Chapter 11 Case.

#157108997_v11
#158236276_v1

regard to the notice set forth in clause (d) below), in an amount not to exceed $50,000, (c) to the extent allowed at any time, whether by interim or final compensation order, procedural order or any other order of the Bankruptcy Court, all unpaid fees, costs, and expenses (the "Allowed Professional Fees") incurred or accrued by persons or firms retained by the Debtor pursuant to section 327, 328 or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and any Committee in the Chapter 11 Case pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following a delivery by the DIP Lender or the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders) of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, plus (d) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1 million plus the success fee (if earned) by Perella Weinberg Partners LP/Tudor Pickering Holt & Co in connection with the Sale Transaction (the "PWP Success Fee"); provided that except for the PWP Success Fee, no success, completion or similar fees shall be payable from the Carve-Out, incurred after the first business day following delivery of a Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim or final compensation order, procedural order, or any other order of the Bankruptcy Court (the amount set forth in this clause (d), the "Post Carve-Out Trigger Notice Cap"). Notwithstanding anything to the contrary in this Final Order, following the delivery of a Carve-Out Trigger Notice, any of the statutoryStatutory Fees, Allowed Professional Fees or other fees covered by this Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered cash that is not Cash Collateral (if any) and second, if there is no remaining unencumbered cash that is not Cash Collateral, from Cash Collateral. For the avoidance of

#157108997_v11
#158236276_v1

doubt, the amount of Allowed Professional Fees due and payable by the Debtor or under 28 U.S.C. § 1930(a) shall not be restricted or capped by the Budget or the Carve-Out. Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (x) a Challenge (as defined in the Cash Collateral Order), (y) any attempts to modify any of the right granted to any of the Prepetition Secured Parties hereunder, or (z) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of the Court.

(ii)    Upon the occurrence of a DIP Termination Event, the DIP Lender or the Agent may deliver a Carve-Out Trigger Notice to the Debtor describing the DIP Termination Event that has occurred and is continuing. Immediately upon the Debtor's receipt of a Carve-Out Trigger Notice, the Debtor shall deposit first, from unencumbered cash that is not Cash Collateral (if any) and second, if there is no remaining unencumbered cash that is not Cash Collateral, from the Cash Collateral an amount equal to the Carve-Out (the "Carve-Out Amount") into a segregated account not subject to the control of either the DIP Lender or the Agent (the "Carve-Out Account"). For the purpose of this Order, a "Carve-Out Trigger Notice" is a written notice issued by the Agent (at the direction of Requisite Consenting Prepetition Lenders) or by the DIP Lender by email (or other electronic means), sent following the Termination Date to the Debtor, Holland & Knight LLP as their lead restructuring counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of a Termination Event under the Cash Collateral Order or this Final Order that the Post Carve-Out Trigger Notice Cap has been invoked. The Carve-Out shall be held for the benefit of the U.S. Trustee, the Chapter 7 Trustee (if any), and the Professional Persons to pay the Allowed Professional Fees and the PWP Success Fee, and shall be available only to satisfy

#157108997_v11
#158236276_v1

such obligations until paid in full. The failure of the Carve-Out to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and nothing herein shall be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtor.

17.    <u>Rights and Remedies Upon a DIP Termination Event; Funding of the Carve-Out</u>.

(i)    Subject to the limitations set forth herein, immediately upon the occurrence and during the continuation of a DIP Termination Event, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, the DIP Lender or Agent (acting at the direction of the Requisite Consenting Prepetition Lenders), as applicable, may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>"): (a) all DIP Obligations owing under the DIP Facility Documents to be immediately due and payable; (b) the termination, reduction, or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Facility; (c) termination of the DIP Facility and the respective DIP Facility Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations. The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtor, counsel to the Committee (if appointed), counsel to the Agent and the Ad Hoc Group, and the U.S. Trustee.

(ii)    The automatic stay in this Chapter 11 Case otherwise applicable to the DIP Lender is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (such period, the "<u>Remedies Notice Period</u>"): the DIP Lender, or the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders), as applicable,

#157108997_v11
#158236276_v1

shall be entitled to exercise their rights and remedies, in accordance with the respective DIP

Facility Documents and this Final Order (subject to the funding in full of the Carve-Out),

including without limitation, exercising rights of setoff or foreclosing on all or a portion of the

DIP Collateral, occupying the Debtor's premises, or conducting a sale or disposition of the DIP

Collateral, and shall be permitted to satisfy the relevant DIP Obligations, DIP Superpriority

Claim, and DIP Liens.

    (iii) During the Remedies Notice Period, the Debtor and/or the Committee (if

appointed), and any other party in interest, may seek an emergency hearing from the Court to

prevent or limit the DIP Lender's exercise of rights and remedies, including the delivery of the

Carve-Out Trigger Notice, and the DIP Lender and the Prepetition Secured Parties shall consent

to such emergency hearing (for the avoidance of doubt, all rights of the Prepetition Secured

Lenders are reserved). Unless during the Remedies Notice Period, the Court determines that a

DIP Termination Event has not occurred, or the Debtor cures the DIP Termination Event (to the

extent curable under the DIP Facility Documents) that was the basis for the delivery of a

Termination Declaration in accordance with the terms and conditions of the DIP Facility

Documents, the automatic stay imposed under section 105 or 362(a) of the Bankruptcy Code or

otherwise, as to the DIP Lender and Agent and the Prepetition Secured Lenders, as applicable,

shall automatically be terminated at the end of the Remedies Notice Period without further

action, notice or order.

    (iv) Upon expiration of the Remedies Notice Period, unless the Court orders

otherwise within the Remedies Notice Period, the DIP Lender or the Agent or Prepetition

Secured Lenders, as applicable, shall be permitted to exercise all remedies set forth herein, in the

DIP Facility Documents, and as otherwise available at law without further order of or application

#157108997_v11
#158236276_v1

or motion to the Court. The Debtor shall reasonably cooperate with the DIP Lender or the Agent or Prepetition Secured Lenders, as applicable, in their exercise of rights and remedies against the DIP Collateral.

(v)     For the avoidance of doubt, the remedies set forth in this paragraph 17 shall be cumulative and non-exclusive.

(vi)     Notwithstanding the foregoing or anything contained in any DIP Facility Document to the contrary, ~~after the exercise of remedies provided for in this Final Order or the DIP Facility Documents~~ after expiration of the Remedies Notice Period, any amounts subject to the DIP Liens (including cash, equity securities, debt securities, or any other property received on account of the DIP Collateral or in consideration of any waiver of any rights to receive any payment of the DIP Obligations (whether received as a consequence of the exercise of such remedies or as a distribution under the Chapter 11 Case)), after first giving effect to the priorities set forth in paragraph 6 of this Final Order, shall be turned over to the Agent (to the extent not received directly by the Agent) and applied by the Agent (for the benefit of the Prepetition Secured Lenders), in the following order:

(a)     to the Carve-Out Account, unless and until the Carve-Out Amount is fully funded;

(b)     to the balance of the Term Loan up to the amount of $55 million;

(c)     to the DIP Lender to be applied to the DIP Obligations in an amount of the then outstanding DIP Obligations, up to $5,000,000.00;

27

(d)      to payment of the remaining balance of Term Lender Prepayment Claim (as defined in the PSA);

(e)      the balance, if any, after all of the DIP Obligations and the above have been indefeasibly paid in full, to the Debtor.

18.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed or modified on appeal, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such reversal or modification shall not affect the validity of the debt incurred hereunder, or the liens granted, or priority of lien granted hereby.

19.    <u>DIP Expenses</u>. On the "Maturity Date" (as defined in the DIP Credit Agreement), the Debtor is authorized and directed to pay all reasonable and documented prepetition and post-petition fees, costs, disbursements, and expenses of the DIP Lender in connection with the DIP Facility and this Chapter 11 Case, as provided in the DIP Facility Documents, whether or not the transactions contemplated hereby are consummated, as set forth herein. The Debtor shall pay the fees and expenses provided for in this paragraph after the passage of ten business days after the Maturity Date, provided, however, that invoices for such fees and expenses shall be submitted to counsel to the Debtor and copies thereof provided to counsel to the Agent and the Ad Hoc Group, the U.S. Trustee, and counsel to any Committee ("<u>Fee Notice Parties</u>"), who shall have ten (10) business days to review and to assert any objections thereto. Invoices for professional fees shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an

hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional. If within ten (10) days of submission of such invoices to the Debtor and Fee Notice Parties either the Debtor or any of the Fee Notice Parties shall have objected in writing to such fees and expenses, the Debtor shall pay only the undisputed portion (if any) of such fees and expenses and such objection shall be resolved by this Court upon notice and hearing and promptly paid in accordance with separate Court order. The DIP Lender or its counsel may redact the invoices transmitted to the Debtor and the other Fee Notice Parties, provided that U.S. Trustee reserves his right to seek to obtain unredacted copies of such invoices. The transmission of the invoices, even if not redacted, shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.

20.    <u>Indemnification</u>. The Debtor shall indemnify and hold harmless the DIP Lender and the Prepetition Secured Parties and their respective Related Parties (as defined in the DIP Credit Agreement) in accordance with the terms and conditions of the DIP Credit Agreement.

21.    <u>Limitations on Use of DIP Proceeds and Carve-Out</u>. No DIP Collateral, DIP Loans, or the proceeds of the foregoing or any portion of the Carve-Out may be used directly or indirectly by any of the Debtor, any Committee, or any trustee or other estate representative appointed in this Chapter 11 Case or any Successor Case or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) in connection with: (i) preventing, hindering, or delaying (a) the DIP Lender or the Agent or Prepetition Secured Lenders, as applicable, enforcement or realization upon any of the DIP Collateral or the Prepetition Secured Parties' enforcement upon the Prepetition Collateral; (ii)

#157108997_v11
#158236276_v1

using or selling or otherwise disposing of (a) the DIP Collateral without the consent of the DIP Lender or the Prepetition Secured Parties, or (b) the Prepetition Collateral without the consent of the Prepetition Secured Parties (other than pursuant to a Sale consistent with the Sale Motion); (iii) using or seeking to use any insurance proceeds (a) constituting DIP Collateral without the consent of the DIP Lender or the Prepetition Secured Parties except to the extent permitted under the DIP Credit Agreement or (b) constituting Prepetition Collateral except to the extent permitted by the Prepetition Secured Parties and consistent with the Plan Support Agreement; (iv) incurring indebtedness without the prior consent of the DIP Lender or the Requisite Consenting Prepetition Lenders, except to the extent permitted under the DIP Credit Agreement; (v) seeking authorization to obtain liens or security interests that are senior to, or on a parity with, the Carve-Out, the DIP Liens, the DIP Superpriority Claim, or the Prepetition Liens; (vi) seeking to amend or modify any of the rights granted to (a) the DIP Lender, including seeking to use DIP Collateral on a contested basis, or (b) the Prepetition Secured Parties or seeking to use the Prepetition Collateral on a contested basis; (vii) objecting to or challenging in any way (a) the DIP Liens, the DIP Obligations, and/or the DIP Collateral, or any other claims or liens, held by or on behalf of the DIP Lender, or (b) the Prepetition Liens and/or Prepetition Collateral or any other claims or liens, held by or on behalf of any of the Prepetition Secured Parties; (viii) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against the DIP Lender or the Prepetition Secured Parties, with respect to any of the foregoing, any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (ix) litigating, objecting to, challenging, investigating (including by way of examination or discovery), contesting in any

30

manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of (a) the DIP Obligations, DIP Liens, or any other rights or interests of the DIP Lender or (b) the Prepetition Secured Obligations or any other rights and interests of the Prepetition Secured Parties; (x) seeking to subordinate, recharacterize, disallow, or avoid (a) the DIP Liens or the DIP Obligations or (b) the Prepetition Liens or the Adequate Protection Liens; or (xi) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court (including, without limitation, hereunder).

22.   Release. Subject to Paragraph 23 hereof, the Debtor, on behalf of itself and its estate (including any successor trustee or other estate representative in this Chapter 11 Case or any Successor Case) and any party acting by, through, under, or on behalf of the Debtor or its estate, hereby stipulates and agrees that it forever and irrevocably (i) releases, waives, and acquits (a) the DIP Lender, and (b) its affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns and predecessors in interest, in their capacities as such (collectively, the "Released Parties"), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, of any kind, including, without limitation, (1) any and all claims and causes of action arising under the

31

Bankruptcy Code (including, without limitation, claims and causes of action arising under Chapter 5 of the Bankruptcy Code) or state avoidance laws, (2) any rights of contribution with respect to the Guaranteed Obligations, and (3) any claims based on alter-ego or similar theories; (ii) with respect to the Released Parties, waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the Guaranteed Obligations, the DIP Obligations, the DIP Liens, the Prepetition Liens, the Prepetition Loan Documents, and the DIP Superprioirity Claim (the "Released Claims and Defenses"). For the avoidance of doubt, the foregoing release shall not constitute a release of the Released Parties with respect to any rights or obligations arising under the Plan Support Agreement, the DIP Facility Documents, or this Final Order.

23.    Preservation of Challenge Rights. Notwithstanding anything herein to the contrary, the Debtor's stipulations, admissions, agreements, and releases contained in paragraph 22 of this Final Order shall be binding upon (i) the Debtor and its estate, in all circumstances and for all purposes and (ii) all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the chapter 11 cases (including a Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtor's estate including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor, in all circumstances and for all purposes unless such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing granted by the Court, has filed an adversary proceeding or contested matter with respect to the Released Claims and Defenses (collectively, a "Challenge") against the Released Parties by the Challenge Deadline. For the purposes of this Final Order, the "Challenge Deadline" shall mean the earlier of: (i) the date of confirmation of a

#157108997_v11
#158236276_v1

plan of reorganization; or (ii) 75 days following the entry of this Final Order, *provided* that if the case converts to a Chapter 7, or if a Chapter 11 trustee is appointed, prior to the Challenge Deadline, the Challenge Deadline shall be extended for the Chapter 7 or Chapter 11 trustee to 45 days after their appointment; *provided further* that such deadline may be extended (1) in writing prior to the expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time in the sole discretion of the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders). Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if appointed) or any non-statutory committees appointed or formed in the Chapter 11 Case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate, and all rights to object to such standing are expressly reserved. The filing of a motion seeking standing to file a Challenge before the Challenge Deadline, which attaches a pleading setting forth a Challenge, shall extend the Challenge Deadline with respect to that party until two business days after the Court rules on the standing motion, or such other time period ordered by the Court in such ruling.

24.     For the avoidance of doubt, any Chapter 7 or Chapter 11 trustee appointed or elected in this case shall, until the expiration of the Challenge Deadline, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Final Order.

22.    25. No Third Party Rights. Except as explicitly provided for herein, and, for the avoidance of doubt, except for the Agent and Prepetition Secured Lenders, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

23.    26. Limitation on Charging Expenses Against Collateral. Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Case or any future proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the proceeds thereof pursuant to Bankruptcy Code sections 506(b), 552(b) or any similar principle of law, or 105(a).

24.    27. Section 552(b) Waiver: The DIP Lender shall be entitled to all rights and benefits of section 552(b) and the "equities of the case" exception shall not apply to its liens as to the DIP Collateral.

25.    28. Section 506(c) Claims. Save and except for the Carve-Out, no costs or expenses of administration which have been or may be incurred in this Chapter 11 Case at any time shall be charged against the DIP Lender, the DIP Collateral, or the proceeds thereof pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of each of the DIP Lender and the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders), and no such consent shall be implied from any other action, inaction, or acquiescence by any such agent, trustee or lenders.

26.    29. No Marshaling / Applications of Proceeds. The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

#157108997_v11
#158236276_v1

27.    30. Rights Preserved. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (i) the DIP Lender's or the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtor; (ii) any of the rights of the DIP Lender or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (a) request modification of the automatic stay of section 362 of the Bankruptcy Code, (b) request dismissal of this Chapter 11 Case or any Successor Case, conversion of this Chapter 11 Case to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (c) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans. Other than as expressly set forth in this Final Order, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender and Prepetition Secured Parties are preserved.

28.    31. No Waiver by Failure to Seek Relief. The failure of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Facility Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of such parties.

29.    32. Binding Effect of the Final Order. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Lender, the Prepetition Secured Parties, all other creditors of the Debtor, any Committee, or any other court appointed committee appointed in this Chapter 11 Case, and all other parties in interest, and their respective successors and assigns, including any trustee or other fiduciary

35

hereafter appointed in the Chapter 11 Case, any Successor Case, or upon dismissal of the Chapter 11 Cases or any Successor Case.

30.    33. No Modification of Final Order. Except as otherwise ordered by the Court, until and unless the DIP Obligations have been indefeasibly paid in full in cash in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility Documents which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, it shall be an Event of Default for the Debtor to seek and shall not seek or consent to, directly or indirectly: (i) without the prior written consent of the DIP Lender and the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders) (a) any modification, stay, vacatur, or amendment to this Final Order or (b) save and except for the Carve-Out, a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in the Chapter 11 Case or any Successor Case, *pari passu* or superior to the DIP Superpriority Claim or the Adequate Protection Claim; or (ii) without the prior written consent of the DIP Lender and the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders), save and except for the Carve-Out, any lien on any of the DIP Collateral with priority *pari passu* or superior to the DIP Liens or the Prepetition Liens. Unless otherwise ordered by the Court, it shall be an Event of Default for the Debtor to seek any material amendment, modification, or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Lender and the Agent (acting at the direction of the Requisite Consenting Prepetition Lenders), and no such

36

consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender, the Prepetition Secured Parties, or any other party.

31.    34.  Limits on Lender Liability. Nothing in this Final Order or in any of the DIP Facility Documents, the Prepetition Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtor in the operation of its business or in connection with the administration of this Chapter 11 Case. The DIP Lender, by virtue of making the DIP Loan, and the Prepetition Secured Parties, by virtue of consenting to the extension of the DIP Loan, the priming of their liens, and other provisions set forth in this Final Order, or consenting to the Debtor's post-petition use of Cash Collateral, shall not be deemed in control of the operations of the Debtor or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Final Order or the DIP Facility Documents or in the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtor.

32.    35.  Insurance Proceeds and Policies. Upon entry of this Final Order and to the fullest extent provided by applicable law, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured on each liability insurance

#157108997_v11
#158236276_v1

policy and loss payee on each property coverage insurance policy maintained by the Debtor that in any way relates to the DIP Collateral.

33.   ~~36.~~ Final Order Controls. In the event of any inconsistency between the terms and conditions of the DIP Facility Documents and/or this Final Order, the provisions of this Final Order shall govern and control.

34.   ~~37.~~ Survival. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (i) confirming any plan of reorganization or liquidation in this Chapter 11 Case; (ii) converting this Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code; (iii) dismissing this Chapter 11 Case or any Successor Case; or (iv) pursuant to which this Court abstains from hearing this Chapter 11 Case or any Successor Case, provided, however, that the various superpriority claims or other administrative expenses shall survive only to the extent permitted by applicable law. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Lender pursuant to this Final Order or the DIP Facility Documents, notwithstanding the entry of any order in clauses (i) through (iv) of this paragraph, shall continue in this Chapter 11 Case, in any Successor Case, or following dismissal of this Chapter 11 Case or any Successor Case, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been paid in full.

35.   ~~38.~~ The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

36.   ~~39.~~ Bankruptcy Rule 6003(b) has been satisfied.

38

37.    ~~40.~~ Pursuant Bankruptcy Rule 6004(h), the Court hereby orders that the terms and conditions of this Final Order shall be immediately effective and enforceable upon entry of this Final Order.

38.    ~~41.~~ The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

~~#157108997_v11~~
#158236276_v1

**<u>Exhibit A</u>**

**DIP Credit Agreement**

Document comparison by Workshare Compare on Friday, June 10, 2022 11:20:11 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\pwnelson\Desktop\ECEC -- Final DIP Order(157108997.11).docx |
| Description | ECEC -- Final DIP Order(157108997.11) |
| Document 2 ID | iManage://HKDMS/Active/158236276/1 |
| Description | #158236276v1<Active> - ECEC -- Revised Final DIP Order (Releases and Challenge Provisions Removed) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 43 |
| Deletions | 47 |
| Moved from | 3 |
| Moved to | 3 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 96 |