# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ECTOR COUNTY ENERGY CENTER LLC[1] | ) | Case No. 22-10320 (JTD) |
| | ) | |
| Debtor. | ) | **Docket Nos. 163 and 201** |

## OBJECTION OF INVENERGY THERMAL OPERATING I LLC TO MOTION FOR ORDER AUTHORIZING DIRECT ENERGY MARKETING, LLC TO COMMENCE AND PROSECUTE CLAIMS ON BEHALF OF THE ESTATE

Invenergy Thermal Operating I LLC ("ITOI"), by and through its undersigned counsel, objects (the "Objection") to *the Motion for Order Authorizing Direct Energy Marketing, LLC to Commence and Prosecute Claims on Behalf of the Estate* [Docket No. 163] (the "Standing Motion") and states as follows:

### PRELIMINARY STATEMENT

1. Direct Energy Marketing, LLC ("Direct Energy") filed the Standing Motion attaching a proposed complaint on May 25, 2022 and filed a revised proposed complaint (the "Proposed Complaint") [Docket No. 201] on June 8, 2022. By the Standing Motion, Direct Energy seeks authority to commence and prosecute eight claims on behalf of the estate of Ector County Energy Center LLC ("ECEC" or the "Debtor"), two of which name ITOI as a defendant— subrogation (Count V) and breach of fiduciary duty (Count VII). Accordingly, this Objection addresses only the subrogation claim and the breach of fiduciary claim.

2. Direct Energy's claims against ITOI lack merit for the many reasons stated in the Debtor's Reply to *Direct Energy's Objections to the Cash Collateral Motion, the Bid Procedures Motion, and the Shared Services Motion* [Docket No. 158]. And while ITOI believes these claims

---

[11] The last four digits of the Debtor's federal tax identification are 6852. The Debtor's mailing address is One South Wacker Drive, Suite 1900, Chicago, IL, 60606, and the Debtor has a principal place of business at 8200 OB Holt Road, Goldsmith, Ector County, Texas 79761.

are not colorable on the merits, even if the court were to find the claims to be colorable, the Court should nonetheless deny the Standing Motion as to Counts V and VII as a matter of law.

## ARGUMENT

**The Subrogation and Breach of Fiduciary Duty Claims are not Colorable Because Delaware Law Prohibits Creditors from Asserting Derivative Claims Against a Delaware Limited Company.**

3. The subrogation and breach of fiduciary duty claims (together, the Derivative Claims") are claims belonging to ECEC, and Direct Energy recognizes as much because it asserts those claims on behalf of the ECEC. *See* Proposed Complaint ¶¶ 88, 96, 97, 98, 104 and 105.[2] The Derivative Claims are not colorable because, under Delaware law, Direct Energy does not have standing to bring derivative claims on behalf of ECEC, a Delaware limited liability company.

4. Section 18-1001 of the Delaware Limited Liability Act creates a statutory right to members and assignees to bring a derivative action on behalf of a Delaware limited liability company:[3]

> A member or an assignee of a limited liability company interest may bring an action in the Court of Chancery in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed.

6 Del. C. § 18-1001. This section, by its plain language, authorizes only a member or an assignee to bring a derivative action against a limited liability company.

5. Section 18-1002 specifically provides that no party other than a member or assignee is permitted to bring a derivative action:

---

[2] Subrogation is clearly a derivative claim under New York Law. "'Subrogation is the right one party has against a third party following payment, in whole or in part, of a legal obligation that ought to have been met by the third party.'" Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (1999) (quoting 2 Allan D. Windt, *Insurance Claims and Disputes* § 10.05 (1995)). "The doctrine of equitable subrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *Id.*

[3] *See CLM V, LLC v. Bax*, 6 A. 3d 238, 241 (Del. Ch. 2010).

2

> In a derivative action, ***the plaintiff must be a member or an assignee of a limited liability company interest*** at the time of bringing the action and:
>
>> (1) At the time of the transaction of which the plaintiff complains; or
>>
>> (2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction.

6 Del. C. §18-1002 (emphasis added). "Under the plain language of Section 18–1002, standing to bring a derivative action is limited to 'a member or an assignee.' Read literally, Section 18–1002 denies derivative standing to creditors of an insolvent LLC." *CLM V, LLC v. Bax*, 6 A. 3d 238, 241 (Del. Ch. 2010).

      6.     This Court has consistently held that creditors do not have standing to assert derivative actions against a limited liability company.[4] In *Citadel*, the liquidation trustee was prosecuting derivative actions (originally brought by the creditors) on behalf of four debtors, one of which was a Delaware limited partnership, two of which were North Dakota limited liability companies and one of which was a Wyoming limited liability company. *Citadel*, 603 B.R. at 901. The *Citadel Court*, interpreting Sections 17-1001 and 17-1002 of the Delaware Limited Partnership Act, which are virtually identical to Sections 18-1001 and 18-1002,[5] held that the liquidation trustee did not have standing to prosecute derivative actions on behalf of the Delaware LP:

> Section 17-1001 provides the right to bring an action, while § 17-1002 provides who may bring the action. Section 17-1002 is unambiguous on its face; therefore, the statute's plain language controls. The provision requires that a proper derivative action plaintiff "must be a partner or an assignee of a partnership interest." Authority for derivative standing by creditors

---

[4] *See In re Citadel Watford City Disposal Partners, L.P.*, 603 B.R. 897 (Bankr. D. Del. 2019); In re HH Liquidation, LLC, 590 B.R. 211 (Bankr. D. Del. 2018); In re Pennysaver USA Publishing, LLC, 587 B.R. 445 (Bankr. D. Del. 2018).

[5] "The Delaware Limited Liability Company [] Act contains virtually identical standing provisions as the LP Act, except for substituting terms relevant to the entity, such as 'member' for 'partner' and 'limited liability company' for 'limited partnership.'" *Citadel*, 603 B.R. at 903.

who are not partners or assignees of partnership interests is plainly missing from the statutory language. Under Delaware law, then, creditors of limited partnerships lack standing to sue derivatively on behalf of an LP.

*Citadel*, 603 B.R. at 903. Applying the North Dakota and Wyoming limited liability company acts' derivative standing statutes, which are substantially similar to the Delaware statutes,[6] the Court also held that the liquidation trustee did not have standing to prosecute derivative actions on behalf of the North Dakota limited liability companies or the Wyoming limited liability company. *Id.* at 906-07.

7. *HH Liquidation* involved an adversary proceeding brought by the committee which, among other things, asserted breach of fiduciary duty claims against the debtors, some of which were limited liability companies. *HH Liquidation*, 590 B.R. at 284. The Court held that the Committee did not have standing to bring the breach of fiduciary duty claims on behalf of the debtors that were limited liability companies. *Id.* at 285. In reaching this conclusion, the Court found that the Delaware Limited Liability Company Act is clear and unambiguous about who can bring a derivative action: the plaintiff "must be a member or an assignee." *Id.* at 284 (quoting 6 Del. C. § 18-1002). *Id.* The Court found that

> The Committee is neither a member nor an assignee. Under the plain language of the statute, the Committee has no standing to bring a breach of fiduciary duty claim…. [A] creditors committee is a collection of unsecured creditors. [citation omitted]. Its rights to assert derivative claims are limited to the derivative standing of its members, none of whom have standing as creditors of a Delaware LLC to assert derivative claims of breach of fiduciary duty on behalf of the company. [citation omitted]

*Id. See also Pennysaver*, 587 B.R. at 467 (holding that "[t]he claim for breach of fiduciary duties owed to the creditors fails because the Trustee does not allege that the creditors are assignees or members of the Debtors' LLCs. The creditors of the Debtors' LLC thus lack standing to sue the

---

[6] "The Wyoming and North Dakota derivative statutes are substantially similar to that of Delaware, have been interpreted consistently with the Delaware decisions and limit derivative actions authorized by statute to members at the time an action is commenced." *Id.* at 906.

LLC or its members and directors for breaches of fiduciary duties.").

8.  This case is virtually identical to *Citadel*, *HH Liquidation*, and *Pennysaver*. Direct Energy, a creditor, is requesting authority to pursue derivative claims on behalf of ECEC, which is a Delaware limited liability company. And like those cases, Direct Energy is not authorized under Delaware law to pursue derivative actions on behalf of ECEC. As a result, Count V (subrogation) and Count VII (breach of fiduciary duty claim) do not assert colorable claims because those counts would be dismissed for lack of standing if filed. Accordingly, the Standing Motion should be denied as to Counts V and VII of the Proposed Complaint.

9.  Direct Energy relies on *Miller v. Fallas*,[7] in support of its argument that the Court should authorize it to assert the Derivative Claims despite Delaware law to the contrary. Its reliance is misplaced. In *Miller*, this Court considered whether a chapter 7 trustee could pursue fraudulent transfer claims against certain limited liability company debtors. *Miller v. Fallas* at 27-28. This Court found in the affirmative because creditors have direct standing to pursue fraudulent transfer actions and, as a result, the trustee's standing was derivative of the creditors' rights, not the debtors' rights. *Id*. at 28. That is not the case here because the asserted breach of subrogation and fiduciary duty claims are clearly derivative of ECEC's rights.

10.  Direct Energy argues that, notwithstanding state law regarding derivative standing, federal bankruptcy law governs who has standing to assert derivative claims post-bankruptcy. Five judges in this district have held to the contrary. In *In re Dura Automotive Systems, LLC*,[8] the Court was faced with the exact same issue presented here. In denying the committee's request for

---

[7] *See* Opinion and Order, *Miller v. Fallas (In re J&M Sales Inc.)*, Adv. Pro. No. 20-50775 (JTD) (Bankr. D. Del. Aug. 20, 2021) (Docket No. 306).

[8] Case No. 19-12378 (KBO) (Bankr. D. Del. June 9, 2020) (unpublished bench ruling).

standing to pursue derivative claims on behalf of the debtor, a Delaware limited liability company, the Court stated that

> To determine that the third party may bring the claim under the derivative basis and, thus, step into the shoes of the debtor to pursue them, the Court must look to the law of the debtors, state of incorporation or formation, which in this case, is Delaware. Delaware state law is clear that members or assignees of a limited liability company interest have the exclusive ability to sue derivatively due to the unambiguous text of the LLC Act and, critically, the committee has not pointed to a Bankruptcy Code provision specifically at odds with this law.

*Dura Automotive*, transcript at 46:18-47:2.[9] *See also Citadel*, 603 B.R. at 903 (holding that, under the internal affairs doctrine, the laws of the state of formation "apply in determining the standing of creditors to bring derivative breach of fiduciary duty claims"); *HH Liquidation*, 590 B.R. at 284 (applying Delaware law in determining that committee lacked standing to pursue derivative claims against limited liability companies); *Pennysaver*, 587 B.R. at 466-67 (applying Delaware law in determining that trustee lacked standing to pursue derivative claims against limited liability company); *In re Optim Energy, LLC*, 2014 WL 1924908 *6, Shannon, J. (Bankr. D. Del. May 13, 2014) (finding that creditor's request for derivative standing to pursue claims on behalf of a Delaware limited liability company was futile because the limited liability company agreement eliminated all fiduciary duties as permitted by the Delaware Limited Liability Company Act).

11. Based on the foregoing, the Court should find that Direct Energy does not have standing to prosecute either of the Derivative Claims against ITOI.

---

[9] A copy of the portion of the transcript containing the Court's ruling is attached hereto as Exhibit A.

## Conclusion

WHEREFORE, ITOI respectfully requests that this Honorable Court deny Direct Energy's request for authority to commence and prosecute Counts V and VII against ITOI.

Dated: June 10, 2022
      Wilmington, Delaware

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*William A. Hazeltine*
_____
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195
Email: bsullivan@sha-llc.com
      whazeltine@sha-llc.com

*Attorneys for Invenergy Thermal Operating I LLC*