**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ECTOR COUNTY ENERGY CENTER LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10320 (JTD)<br><br>**Re: Docket Nos. 7, 8, 136** |

**SUPPLEMENTAL DECLARATION OF ALEXANDER SVOYSKIY IN SUPPORT OF MOTION OF DEBTOR FOR ORDERS (I)(A) AUTHORIZING DEBTOR'S ENTRY INTO ASSET PURCHASE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) AUTHORIZING AND APPROVING A BREAK-UP FEE AND REDUCED BREAK-UP FEE, (E) APPROVING THE NOTICE PROCEDURES, AND (F) SETTING A DATE FOR THE SALE HEARING; AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

I, Alexander Svoyskiy, hereby declare under penalty of perjury:

1.        I am a Managing Director at Perella Weinberg Partners LP ("Perella", and together with its energy merchant and investment banking division, Tudor, Pickering, Holt & Co. ("TPH"), "PWP" or the "Firm") which has its principal office at 767 Fifth Avenue, New York, New York 10153. PWP is part of a global financial services firm that provides corporate advisory and asset management services. On October 14, 2021, Ector County Energy Center LLC ("Ector" or the "Debtor") engaged PWP as investment banker in connection with the Debtor's marketing and sale of substantially all of its assets pursuant to that certain engagement letter dated October 14, 2021 (the "Engagement Agreement").

---

[1] The last four digits of the Debtor's federal tax identification are 6852. The Debtor's mailing address is One South Wacker Drive, Suite 1900, Chicago, IL, 60606, and the Debtor has a principal place of business at 8200 OB Holt Road, Goldsmith, Ector County, Texas, 79761. More information about the Debtor and this case is available on the website maintained by Donlin, Recano & Company, Inc., the Debtor's claims and noticing agent, at www.donlinrecano.com/ecec, or can be requested by e-mail at ececinfo@donlinrecano.com.

2.     I submit this declaration (this "<u>Supplemental Declaration</u>")[2] to supplement the *Declaration of Alexander Svoyskiy in Support of Motion of Debtor for Orders (I)(A) Authorizing Debtor's Entry into Asset Purchase Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Authorizing and Approving a Break-Up Fee and Reduced Break-Up Fee, (E) Approving the Notice Procedures, and (F) Setting a Date for the Sale Hearing; and (ii) Authorizing and Approving (A) the Sale of Certain Assets, and (B) the Assumption and Assignment of Certain Executory Contacts and Unexpired Leases* [Docket No. 8] (the "<u>Initial Declaration</u>"),[3] which I submitted in support of the *Motion for Orders (I)(A) Authorizing the Debtor's Entry in Asset Purchase Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Authorizing and Approving a Break-Up Fee and Reduced Break-Up Fee, (E) Approving the Notice Procedures, and (F) Setting a Date for the Sale Hearing; and (II) Authorizing and Approving (A) The Sale of Certain Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 7] (the "<u>Bid Procedures/Sale Motion</u>").

3.     The Initial Declaration included extensive details regarding, among other things, my qualifications, the Debtor's prepetition marketing process, and the identification of a Stalking Horse Bidder (as defined below). Except as modified or supplemented by this Supplemental

---

[2] I am not being specifically compensated for this testimony other than through payments to be received by PWP as a retained professional. I am over the age of 18 years and am authorized to submit this Supplemental Declaration on behalf of the Debtor.

[3] Capitalized terms used as defined terms herein and not otherwise defined shall have the meanings ascribed to them in the Initial Svoyskiy Declaration.

84051930.1

Declaration, my testimony offered in connection with the Initial Declaration remains true and correct to the best of my knowledge, information, and belief and is incorporated herein by reference.

4.     Additionally, since the submission of the Initial Declaration, I have been directly involved in all aspects of the Debtor's sale process and have been in regular communication with the Debtor's personnel, its Chief Restructuring Officer John D. Baumgartner, and its other advisors, including Grant Thornton LLP, Holland & Knight LLP as lead restructuring counsel, and Polsinelli PC, as Delaware co-counsel (the "Debtor's Personnel and Advisors"). Unless otherwise stated in this Supplemental Declaration, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents and information provided to me or verified by the Debtor's Personnel and Advisors, and/or based on my experience, knowledge, and information concerning the Debtor's sale process.

**The Prepetition Marketing Process and Selection of the Stalking Horse Bidder**

5.     As more fully discussed in the Initial Declaration, the Debtor and its professionals engaged in a robust prepetition marketing process that, through extensive and good faith negotiations, culminated in an agreement with Ector County Generation LLC, an acquisition entity affiliated with Rockland Capital, LLC (the "Stalking Horse Bidder" or "Rockland"), that was set forth in an Asset Purchase Agreement (the "Stalking Horse APA"), pursuant to which the Stalking Horse Bidder would acquire substantially all of the Debtor's assets for a purchase price of $91,250,000 (the "Stalking Horse Bid Amount"), subject to various potential adjustments set forth in the Stalking Horse APA, including a working capital adjustment and an additional $2.7 million in "Incentive Consideration" that were collectively projected to increase the sale price to as much as approximately $95 million.

84051930.1

## The Bidding Procedures Order

6.      On April 11, 2022 (the "Petition Date"), the Debtor filed the Bid Procedures/Sale Motion and on May 6, 2022, this Court entered the *Order (A) Authorizing Debtor's Entry Into Asset Purchase Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Authorizing and Approving a Break-Up Fee and Reduced Break-Up Fee, (E) Approving the Notice Procedures, and (F) Setting a Date for the Sale Hearing* [Docket No. 136] (the "Bidding Procedures Order").

7.      Among other things, the Bidding Procedures Order (as amended or supplemented): (i) approved the Bidding Procedures, Break-Up Fee, and Reduced Break-Up Fee as allowed administrative expenses claims; (ii) scheduled the Auction for June 22, 2022 and scheduled the Sale Hearing for June 27, 2022 at 11:00 a.m. (prevailing Eastern Time);[4] (iii) approved the procedures for assumption and assignment of the Assumed and Assigned Contracts, including the Cure Notice; and (iv) approved the form and manner of notice of all procedures, protections, schedules, and agreements described in the Bid Procedures/Sale Motion and attached hereto (as each of these capitalized terms is defined in the Bidding Procedures Order).

## The Post-Petition Marketing Process and Auction

8.      The Debtor and its professionals continued marketing the Debtor's assets after the Petition Date pursuant to the Bidding Procedures Order in an effort to solicit Overbids. During this process, PWP continued its broad marketing outreach to a large group of potential buyers, comprised of strategic investors already operating in the power production industry, participants in related industries potentially interested in vertical integration, hedge funds, private equity funds,

---

[4] The time of the Sale Hearing was changed from 10:00 a.m. to 11:00 a.m.

84051930.1

energy traders and other potential buyers, with a particular focus on parties that expressed interest
in bidding prior to the Petition Date. The list of these potential buyers was developed by PWP,
based upon its significant experience in the energy industry and expertise in the sale of power
assets similar to those in this case, as well as PWP's knowledge of potential buyers who may have
an interest in the Debtor's business.

9.      This marketing outreach generated additional interest among potential purchasers
with three prospective bidders having executed non-disclosure agreements ("NDA") and accessed
the Debtor's virtual data room containing diligence information on the Debtor's business following
entry of the Bidding Procedures Order.  Several of the parties that had signed NDAs prior to the
Petition Date also continued to conduct diligence in furtherance of evaluating whether to submit
an Overbid.  During this time, PWP held numerous discussions with parties involved, provided
timely responses, with assistance of the Debtor's management team as needed, to various due
diligence requests and questions received from parties under NDA, in an order to ensure that
prospective bidders had sufficient information to determine whether to bid prior to the June 17,
2022 Bid Deadline.

10.     Ultimately, PWP received one Qualified Bid (as defined in the Bidding Procedures
Order) from LS Power Equity Advisors, LLC ("LS Power") in the amount of $96,000,000.
Accordingly, on June 21, 2022, in accordance with the Bidding Procedures Order, after LS Power
and Rockland (collectively, the "Bidders") each confirmed an intent to continue bidding, the
Debtor filed a notice indicating that it would conduct, through PWP, a virtual auction of the
Debtor's assets in accordance with the Bidding Procedures Order [Docket No. 243].  Prior to the
commencement of the Auction, PWP worked with the Debtor's professionals to establish Auction
protocols determined as appropriate to assist the Debtor and its professionals in evaluating bids

during the Auction and selecting the Successful Bidder.  The Debtor also determined that any Bid of Rockland would include its $3,193,750 Break-Up Fee as a credit to the purchase price/Bid amount so that the Bids could be compared based on the net cash benefit to the Debtor's estate.

11.     The Debtor and PWP conducted the Auction on June 22, 2022 with the LS Power Bid as the Leading Bid.  In addition to the Bidders and Debtor's professional team, several creditors and parties in interest attended the Auction, including several of the "Consultation Parties" identified in the Bidding Procedures Order. The Auction was transcribed, and the written transcript is being prepared.

12.     Prior to the start of the Auction, the Debtor requested that each Bidder confirm that, in response to *Direct Energy Business Marketing, LLC's Omnibus Objection to Debtor's (I) Motion to Use Cash Collateral and Grant Adequate Protection, (II) Bid Procedures Motion, and (III) Shared Services Motion* [Docket No. 118], the "Avoidance Actions," as that term is defined in the Stalking-Horse APA, to be acquired would not include avoidance actions against the Prepetition Lenders and the Debtor's affiliates.

13.     During the Auction, PWP, on behalf of the Debtor, orchestrated approximately 193 rounds of good faith, arms'-length bidding between, and negotiations with, the Bidders, with Bid increments of $250,000. Through this process, and after not hearing any objection from the Consultation Parties, Rockland's bid of $144,750,000 (less its Break-Up Fee), plus an additional $2.7 million in "Incentive Consideration," was determined to be the highest and best Bid for the Acquired Assets ("Winning Bid") after LS Power declined to submit a higher Bid.  At that time, the Debtor notified Rockland that it was the putative Successful Bidder, and LS Power, the putative Back-Up Bidder, with a Bid of $144,500,000 ("Back-Up Bid"), pending consideration and approval by the Special Committee of the Board of Managers (the "Special Committee") of

6

Invenergy AMPCI Thermal Power LLC, of the terms of the Rockland Bid and receipt of authority from the Special Committee for the Debtor's management to move forward with the Sale on the terms of the Rockland Bid. The Auction was then adjourned, pending the occurrence of a meeting of the Special Committee to deliberate regarding the results of the Auction and Sale.

14.     That approval of the Special Committee to move forward with the Winning Bid, and if necessary, the Back-Up Bid, was obtained on June 22, 2022, and the Debtor and PWP timely informed Rockland that it is the Successful Bidder for the Acquired Assets, since its Bid was determined to be the highest and best, with LS Power serving as Back-Up Bidder.  The Auction has since concluded.

15.     Following the Auction, on June 23, 2022, the Debtor filed the *Notice of Successful Bidder* [Docket No. 249], notifying interested parties of the selection of the Successful Bidder and the Backup Bidder and results of the Auction.

16.     Given the substantial additional value captured through the bid solicitation and Auction process, based on my experience, I believe that the procedures for soliciting and evaluating competing bids as approved in the Bidding Procedures Order were (i) consistent with procedures in similar transactions and with the expectations of potential bidders, (ii) appropriate in terms of the length of the process, the diligence process envisioned and the requirements imposed upon bidders in submitting a bid, (iii) consistent with the market for similar transactions, and (iv) designed to, and did, maintain interest and competition to achieve the highest and best bid possible under the circumstances of this chapter 11 case.

17.     In marketing the Sale, conducting the Auction, and choosing the Winning Bid, I believe that the Debtor complied with the Bidding Procedures Order and conducted all negotiations with prospective bidders. at arms'-length and in good faith. To the best of my knowledge,

84051930.1

information, and belief, (a) the Auction complied in all respects with the Bidding Procedures Order, (b) the Bidding Procedures and Auction process afforded a full, fair, and reasonable opportunity for any Qualified Bidder to make a higher or otherwise better offer to purchase the Debtor's assets, (c) the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner, and (d) the Debtor provided LS Power the opportunity to make a higher and better offer than the Winning Bid.

18.     Rockland and LS Power have provided the Debtor with information showing that each has the financial wherewithal to close this transaction. Neither Rockland nor LS Power is an insider or affiliate of the Debtor, and there is no common identity of incorporators, directors, managers, controlling shareholders, or other insider of the Debtor as between the Debtor and either of Rockland or LS Power. To the best of my knowledge, there was no collusion between the Bidders, and the conduct of the Auction and, including the participation of Rockland and LS Power, was entirely at arm's-length, as I observed.

19.     I believe that Rockland would not have made the Winning Bid and will not close if the sale was not free and clear of all liens, claims, encumbrances, and other interests (except as set forth in the final form of the asset purchase agreement for the Winning Bid, which I understand will be filed as an exhibit to the proposed sale order), or if Rockland would, or in the future could, be liable for any such interests.

20.     I believe that the Winning Bid is the highest and best offer for the Acquired Assets after the reasonable and thorough marketing and bidding process conducted by the Debtor in accordance with the Bidding Procedures Order. I also believe that the consummation of the Winning Bid will provide a greater recovery for the Debtor's estate and creditors than would be provided by any other available alternative. Accordingly, it is appropriate for the Debtor to seek

84051930.1

and obtain authority to close on the Sale pursuant to the terms of the Winning Bid submitted by Rockland.

21.     Further, if Rockland is ultimately unable or unwilling to close on the transaction at the Winning Bid, I believe that the Back-Up Bid would then represent the highest and best offer that the Debtor could obtain for the Acquired Assets and that consummation of the Back-Up Bid, in lieu of the Winning Bid if no longer available, will provide a greater recovery for the Debtor's estate and creditors than would otherwise be provided by any other available alternative.

22.     Accordingly, based on these circumstances, it is appropriate to proceed towards a closing of the Sale to the Successful Bidder, and if the Successful Bidder is unwilling to timely close on the Sale, to the Back-Up Bidder.

I declare under the pains and penalty of perjury that this Declaration is true and correct.

*/s/ Alexander Svoyskiy*
Alexander Svoyskiy
Managing Director
Perella Weinberg Partners LP

Dated: June 23, 2022

84051930.1