**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ECTOR COUNTY ENERGY CENTER LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10320 (JTD)<br><br>**Re: Docket Nos. 7, 136, 138, 174, 231** |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE**
**OF ACQUIRED ASSETS FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING**
**AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

This matter is before the Court on the motion (the "Sale Motion"),[2] dated April 11, 2022 [D.E. 7], of the above captioned debtor and debtor-in-possession (the "Debtor"), for entry of an order (this "Sale Order"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (I) (a) approving the sale procedures in connection with the sale (the "Sale") of the Acquired Assets, (b) approving the amount of and authorizing payment of the Break-Up Fee or the Reduced Break-Up Fee as detailed in the Asset Purchase Agreement and the Sale Motion, (c) scheduling an auction and hearing to approve the Sale transaction and approving the form and manner of notice thereof, and

---

[1] The last four digits of the Debtor's federal tax identification are 6852. The Debtor's mailing address is One South Wacker Drive, Suite 1900, Chicago, IL, 60606, and the Debtor has a principal place of business at 8200 OB Holt Road, Goldsmith, Ector County, Texas, 79761. More information about the Debtor and this case is available on the website maintained by Donlin, Recano & Company, Inc., the Debtor's claims and noticing agent, at www.donlinrecano.com/ecec, or can be requested by e-mail at ececinfo@donlinrecano.com.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Asset Purchase Agreement and the Sale Motion, and to the extent of any inconsistency, the Asset Purchase Agreement shall govern.

(d) establishing procedures relating to the assumption and assignment of executory contracts; and ultimately, (II) an order (a) granting the Debtor authority to sell the Acquired Assets free and clear of Liens, Liabilities and Interests, (b) authorizing the Debtor to assume and assign the Transferred Contracts to the Purchaser, and (c) granting certain related relief; and this Court, in furtherance of the Sale Motion, having entered an order on May 6, 2022 [D.E. 136] (the "Bidding Procedures Order") pursuant to which the Court, among other things, (i) established the date and time for the Auction and Sale Hearing; (ii) approved the proposed bidding procedures regarding the sale (the "Bidding Procedures") appended to the Bidding Procedures Order; (iii) approved the amount and payment of the Break-Up Fee or the Reduced Break-Up Fee, as applicable; (iv) approved the form of, and established procedures regarding the Notice of Auction and Sale Hearing (the "Sale Notice"); and (v) approved the form of, and established procedures regarding the Cure Notice, and governing the assumption and assignment of Transferred Contracts, notice of the Sale, and procedures for determining and fixing cure costs to be paid in respect of Transferred Contracts; and a Qualified Overbid having been received from LS Power Equity Advisors, on behalf of LS Power Equity Partners IV, LP (or its designee) ("LS Power"); and Auction having been held in accordance with the Bidding Procedures on June 22, 2022; the Debtor having determined at the conclusion of the Auction that Ector County Generation LLC, an acquisition entity affiliated with Rockland Capital, LLC submitted the highest and best bid for the Acquired Assets, and is the Successful Bidder (together with its assignees or designees, the "Purchaser") under the Asset Purchase Agreement by and between the Debtor and the Purchaser attached hereto as Exhibit A (the "Asset Purchase Agreement"); and the Debtor having named LS Power as the Back-Up Bidder; a hearing having been held on June 27, 2022 in connection with the Sale Motion (the "Sale Hearing"); and the Court having jurisdiction over the matters raised in the Motion pursuant to 28

2

U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; adequate and sufficient notice of the Bidding Procedures, the Sale Motion, the Sale Hearing, the Cure Notice, and all transactions contemplated thereunder and in this Sale Order having been given in the manner directed by the Court in the Bidding Procedures Order and it appearing that no other or further notice hereof is required; and all parties in interest having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto, (ii) any objections thereto that were not resolved prior to the start of the Sale Hearing; and upon the Sale Motion, the First-Day Declaration, and all supporting Declarations or documents filed in connection therewith; and upon the statements and arguments of counsel made, and the evidence adduced in support of the relief requested by the Debtor at the Sale Hearing and the entire record of the Sale Hearing; and it appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, THE COURT HEREBY FINDS AND DETERMINES THAT:

<u>**Jurisdiction, Final Order and Statutory Predicates**</u>

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any findings of fact herein constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction to hear and determine the Sale Motion and approve the transaction contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014, and Local Rule 6004-1.

D.     This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and Local Rule 6004-1(b), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

## Notice of the Sale and Auction

E.     As evidenced by the affidavits of service previously filed by the Debtor's claims agent [D.E. 81, 143, 148, 152, 190,] ("Proof of Service"), actual written notice of the Sale Motion was provided to the following parties (the "Notice Parties"):  (a) the United States Trustee for the District of Delaware; (b) the parties appearing on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Agent and the Ad Hoc Group, Davis Polk & Wardwell LLP, Attn: Brian Resnick, Esq. and Joshua Sturm, Esq., 450 Lexington Avenue, New York, NY 10017 (brian.resnick@davispolk.com; joshua.sturm@davispolk.com); (d) counsel to the Proposed Purchaser, (i) Bracewell LLP, CityPlace I, 34th Floor, 185 Asylum Street, Hartford, CT 06103 Attn: Mark E. Dendinger, Esq. (mark.dendinger@bracewell.com) and 711 Louisiana St., Suite 2300, Houston, Texas 77002, Attn: Ryan S. Holcomb, Esq. (ryan.holcomb@bracewell.com); and (ii) Bayard, P.A., 600 N. King Street, Suite 400, P.O. Box 25130, Wilmington, DE 19899, Attn: Erin Fay, Esq.

(efay@bayardlaw.com); (e) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Acquired Assets; (f) all non-Debtor parties to any Transferred Contracts; (g) the Debtor's insurers; (h) the Internal Revenue Service, and all other state taxing authorities in jurisdictions in which the Debtor does business; (j) all applicable governmental and regulatory agencies governing the Debtor's industry, (including the Environmental Protection Agency and any state environmental regulatory agencies in the states in which the Debtor does business); (k) each known holder of a claim against the Debtor, including contingent, unliquidated and disputed claims asserted by plaintiffs in litigation initiated against the Debtor prior to the Petition Date; (l) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (m) any other party entitled to notice pursuant to Local Rule 9013-1(m).

  F. The Debtor's Notice Procedures (as defined in the Sale Motion) were reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

  G. As evidenced by the Proofs of Service, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, the Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Transferred Contracts to the Purchaser, has been provided in accordance with the Bidding Procedures Order and sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, the Sale or the assumption and assignment of the Transferred Contracts to the Purchaser is or shall be required.

  H. The Bidding Procedures set forth in the Bidding Procedures Order were reasonable and fair to all Persons, and established in good faith. The disclosures made by the Debtor

concerning the Sale Motion, the Asset Purchase Agreement, the Auction, the Sale, the assumption and assignment of the Transferred Contracts to the Purchaser, and Sale Hearing were good, complete and adequate.

I.      A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of Transferred Contracts to the Purchaser and any Cure Amounts related thereto), has been afforded to all interested persons and entities, including the Notice Parties.

**<u>Good Faith of Purchaser</u>**

J.      The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

K.      Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.

L.      The Purchaser is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Purchaser in no way induced or caused the chapter 11 filing by the Debtor; (e) all payments

6

to be made by the Purchaser in connection with the Sale have been disclosed; and (f) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtor.

### **Highest and Best Offer**

M.      The Debtor conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets. The Auction was duly noticed, the Bidding Procedures were duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

N.      The offer to purchase the Acquired Assets made by the Purchaser, under the terms and conditions set forth in the Asset Purchase Agreement: (i) was made in good faith and complied in all respects with the Bidding Procedures Order; (ii) is the highest or otherwise best offer obtained for the Acquired Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other alternative; (iii) is for fair, adequate, and sufficient consideration that constitutes reasonably equivalent value for the Acquired Assets being conveyed to the Purchaser; (iv) is fair and reasonable; (v) is in the best interests of the Debtor's estate, the Debtor's creditors, and other parties in interest; and (vi) would not have been made by the Purchaser absent the protections afforded to the Purchaser by this Sale Order.

O.      The Debtor's determination that the Sale to the Purchaser, pursuant to the Asset Purchase Agreement, provides the highest or otherwise best offer for the Acquired Assets, and its related decision to sell the Acquired Assets to the Purchaser, each constitutes a reasonable exercise of the Debtor's business judgment and is in the best interests of the Debtor, its estate, and its creditors. The facts and circumstances stated in the Sale Motion and the additional evidence

adduced in connection with the Sale Hearing demonstrate the exigent nature of the Debtor's business situation, and the Debtor has articulated sound business reasons for consummating the transactions contemplated by the Asset Purchase Agreement and for selling the Acquired Assets outside of a chapter 11 plan. It is a reasonable exercise of the Debtor's business judgment to execute, deliver, and consummate the transactions contemplated by the Asset Purchase Agreement, subject to this Sale Order.

P.      At the conclusion of the Auction, the Debtor selected a bid submitted by LS Power as the Backup Bidder on the terms set forth on the record at the Auction.

### No Fraudulent Transfer

Q.      The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Acquired Assets and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. No other person or entity or group of entities has offered to purchase the Acquired Assets for higher or better value to the Debtor's estate than the Purchaser. Approval of the Sale Motion and the Asset Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, its estate, creditors and other parties in interest.

R.      The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor as a result of any action taken in connection with the Sale. The Purchaser shall not be deemed to be holding itself out to the public as a continuation of the Debtor based on the Sale, the Asset Purchase Agreement, or this Order.

#175094375_v8

The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Debtor.

### **Validity of Transfer**

S.      The Debtor (i) has full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (ii) has all corporate authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transactions contemplated thereby. The Debtor's sale or assignment of the Acquired Assets has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtor to consummate the Sale and the transactions contemplated by the Asset Purchase Agreement.

T.      The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Purchaser is entering into the transactions contemplated by the Asset Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

U.      The Debtor has clear and marketable title to the Acquired Assets. The Debtor's right, title and interest in the Acquired Assets constitute property of the Debtor's estate, which is vested in the Debtor within the meaning of section 541(a) of the Bankruptcy Code. Subject to section 363(f) of the Bankruptcy Code, the transfer of the Debtor's right, title and interest to the Acquired Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Acquired Assets free and clear of all Liens, Liabilities and

Interests, but subject to all Assumed Liabilities and Permitted Encumbrances, as each such term is defined in the Asset Purchase Agreement.

**Section 363(f) is Satisfied**

V.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Acquired Assets free and clear of any interest in the property, other than Assumed Liabilities and Permitted Encumbrances.

W.      The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Liens, Liabilities and Interests, other than Permitted Encumbrances and Assumed Liabilities. Unless otherwise expressly included as Permitted Encumbrances or Assumed Liabilities, the Purchaser shall not be responsible for any Liens, Liabilities or Interests.

X.      The Debtor may sell the Acquired Assets free and clear of all Liens, Liabilities and Interests against the Debtor, its estate or any of the Acquired Assets (except the Assumed Liabilities and Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Liabilities or Interests against the Debtor, its estate or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens, Liabilities or Interests (except to the extent that such Liens, Liabilities, or Interests are Assumed Liabilities or Permitted Encumbrances) are adequately protected by having their Liens, Liabilities or Interests, if any, in each instance against the Debtor, its estate or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges a Lien, Liability or Interest, in the same order of priority, with the same

validity, force and effect that such Liens, Liabilities or Interests had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

**Cure/Adequate Protection**

Y.      The assumption and assignment of the Transferred Contracts pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtor and its estate, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.  The Debtor shall, to the extent necessary, provide compensation or adequate assurance of compensation, which amount will be paid to non-Debtor counter-parties to Transferred Contracts for any actual pecuniary loss to any such party resulting from a default prior to the date of assumption and assignment with respect to a Transferred Contract, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  Except where a Transferred Contract is subject to an unresolved objection to the assumption and assignment of such Transferred Contract, payment of the Cure Amounts (as defined below) as set forth herein and the Purchaser's promise to perform the obligations under the Transferred Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

Z.      Except as otherwise set forth herein, any objections to the assumption and assignment of any of the Transferred Contracts to the Purchaser are hereby overruled. Any objections to the Cure Amounts are resolved or adjourned as set forth herein. To the extent that any counterparty failed to timely object to its Cure Amount or adequate assurance of future performance, such counterparty is deemed to have consented to such Cure Amount and the assignment of its respective Transferred Contracts to the Purchaser.

## Compelling Circumstances for an Immediate Sale

AA.    Good and sufficient reasons for approval of the Asset Purchase Agreement and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest. The Debtor has demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate.

AA.    To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale.

BB.    Given all of the circumstances of this chapter 11 case and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed Sale of the Acquired Assets to Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

CC.    The consummation of the Sale and the assumption and assignment of the Transferred Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**A.**      **General Provisions**

1.      The relief requested in the Sale Motion is granted and approved as set forth herein, and the Sale contemplated thereby is approved as more fully set forth herein.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

**B.**      **Approval of the Asset Purchase Agreement**

3.      The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement, and close fully the Asset Purchase Agreement, including the assumption and assignment to the Purchaser of the Transferred Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Sale-related document. The automatic stay imposed

by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

5.      This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Liens, Liabilities or Interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, the Acquired Assets and any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's chapter 11 case. This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

**Transfer of the Acquired Assets**

6.      Pursuant to sections 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer all of its right, title and interest to the Acquired Assets to the Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of such right, title and interest in the Acquired Assets and shall vest Purchaser with all of the Debtor's rights, title and interest in the Acquired Assets and, upon the Debtor's receipt of the Purchase Price, shall be free and clear of all Liens, Liabilities and Interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability, claims in respect of the Excluded Liabilities, and claims asserted against the Debtor as a result of the events of Winter Storm Uri during February, 2021, and any tax liens or mechanic's liens asserted against the Acquired Assets, other than Permitted Encumbrances and Assumed Liabilities, with all such Liens, Liabilities and Interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Liabilities and Interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens,

14

Liabilities and Interests now have against the Acquired Assets, subject to any rights, claims and defenses the Debtor or its estate, as applicable, may possess with respect thereto. Upon the Closing, the Purchaser shall take title to and possession of the Debtor's right, title and interest to the Acquired Assets subject only to the Permitted Encumbrances and Assumed Liabilities.

7.      All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser or its assignee at the Closing. On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Liabilities and Interests in the Acquired Assets, if any, as such Liens, Liabilities and Interests may have been recorded or may otherwise exist.

8.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtor's interests in, against or on all or any portion of the Acquired Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Sale Order.

9.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities or Permitted Encumbrances.

10.     If any person or entity which has filed statements or other documents or agreements evidencing Liens, Liabilities or Interests in, against or on all or any portion of the Acquired Assets (other than statements or documents with respect to Assumed Liabilities and Permitted Encumbrances) shall not have delivered to the Debtor prior to the Closing, in proper form for filing

and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

11.     This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens, Liabilities and Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than Permitted Encumbrances and Assumed Liabilities, shall have been unconditionally released, discharged and terminated from the Acquired Assets, and that the conveyances described herein have been effected. This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

### Assumption and Assignment of Contracts.

12.     Pursuant to section 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtor's assumption and assignment to the Purchaser of the Transferred Contracts is hereby approved.

16

13.     The Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon the Closing of the Sale, the Transferred Contracts free and clear of all Liens, Liabilities and Interests of any kind or nature whatsoever (other than the Permitted Encumbrances and Assumed Liabilities), and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Transferred Contracts, Permitted Encumbrances and Assumed Liabilities to Purchaser.

14.     With respect to the Transferred Contracts: (a) each Transferred Contract is an executory contract or unexpired lease of nonresidential real property under section 365 of the Bankruptcy Code; (b) the Debtor may assume each of the Transferred Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtor may assign each Transferred Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Transferred Contract that prohibit or condition the assignment of such Transferred Contract or allow the party to such Transferred Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Transferred Contract, constitute unenforceable anti-assignment provisions which are deemed void and of no force and effect solely with respect to this Sale; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to Purchaser of each Transferred Contract have been satisfied; (e) the Transferred Contracts shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Transferred Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the

17

Bankruptcy Code, upon payment of the applicable Cure Amount, the Debtor shall be relieved from any further liability with respect to the Transferred Contracts after such assignment to and assumption by Purchaser; and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of the Debtor in each Transferred Contract.

15.    The Debtor is authorized to enter into any amendment of a Transferred Contract on terms acceptable to the Purchaser and agreed to by the counterparty to such Transferred Contract in connection with the assumption and assignment of such Transferred Contract, and the assumption and assignment of the Transferred Contracts authorized by this Sale Order shall be of the Transferred Contracts, as so amended or modified.

16.    All defaults or other obligations of the Debtor under the Transferred Contracts arising or that have become due and not paid prior to the Closing that are required to be cured by section 365(b)(1) of the Bankruptcy Code (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by Seller (or Seller shall have delivered into escrow on terms acceptable to Purchaser amounts sufficient to pay any claim therefor that remains disputed as of the Closing, as such amount shall have been determined by the Bankruptcy Court) at or before the Closing (except as otherwise agreed to by the other party to the Transferred Contracts) and Purchaser shall have no Liability for any such Cure Amount except as expressly set forth in the Asset Purchase Agreement. To the extent that any counterparty to a Transferred Contract did not object to its Cure Amount or adequate assurance of future performance by the applicable Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective Transferred Contracts to the Purchaser.

17.    Unless a different amount has been agreed to by a counterparty to a Transferred Contract or otherwise ordered by the Court, the amount set forth in the *Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor that May Be Assumed and Assigned* (the "Cure Notice") and schedule attached as Exhibit A thereto (the "Cure Schedule"), as amended (*see* D.E. 174, 231), reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Transferred Contracts to the extent such defaults remain outstanding as of the Closing Date (collectively, the "Cure Amounts"), and no other amounts are or shall be due in connection with the assumption by the Debtor and the assignment to Purchaser of the Transferred Contracts; provided, however, that a counterparty to a Transferred Contract shall not be barred from seeking additional amounts on account of any defaults occurring between the deadline to object to the Cure Amounts set forth in the Cure Notice and the assumption of the Transferred Contract.

18.    Upon the Debtor's assumption and assignment of the Transferred Contracts to the Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts, no default shall exist under any Transferred Contract, and no counterparty to any Transferred Contract shall be permitted (a) to declare a default by the Purchaser under such Transferred Contract or (b) otherwise take action against the Purchaser as a result of Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Transferred Contract. Each non-Debtor party to a Transferred Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Purchaser, or its property, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or, against Purchaser, any counterclaim, unexercised setoff or any other claim asserted

19

or assertable against the Debtor; and (ii) imposing or charging against Purchaser or its Affiliates any rent accelerations, assignment fees, increases or any other fees as a result of the Debtor's assumption and assignments to Purchaser of the Transferred Contracts. The validity of such assumption and assignments of the Transferred Contracts shall not be affected by any dispute between the Debtor and any disputes regarding the Cure Amount of any Transferred Contract

19.     Notwithstanding anything to the contrary in this Sale Order, the procedures set forth in the Asset Purchase Agreement and Bidding Procedures shall govern the addition or subtraction of Transferred Contracts to and from the Purchaser's schedule of Transferred Contracts at Schedule 1-H to the Asset Purchase Agreement, and only those Transferred Contracts that remain on such Schedule 1-H as of the Closing Date are subject to assumption and assignment by the Debtor to the Purchaser pursuant to this Sale Order and the Asset Purchase Agreement.

20.     Upon payment of the applicable Cure Amounts, the Debtor and its estate shall have no further liabilities or obligations with respect to any Assumed Liabilities or under any Transferred Contracts and all holders of such claims are forever barred and estopped from asserting such claims against the Debtor, its successors or assigns, its property or its assets or estate.

21.     The failure of the Debtor or Purchaser to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtor's and Purchaser's rights to enforce every term and condition of the Transferred Contracts.

### Prohibition of Actions Against the Purchaser

22.     Except for the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Acquired Assets following the Closing Date. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any

claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to Paragraph 29 below), successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to Paragraph 29 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing. The transaction contemplated by the Asset Purchase Agreement does not amount to a consolidation, merger or de facto merger of the Purchaser, on the one hand, and the Debtor, the Debtor's affiliates and/or the Debtor's estate, on the other hand, and there is not substantial continuity between the Purchaser, on the one hand, and the Debtor or its affiliates, on the other hand, and there is no common identity between the Debtor or its affiliates, on the one hand, and the Purchaser, on the other hand, and the Purchaser is not a mere continuation of the Debtor or its estate, and the Purchaser does not constitute a successor to the Debtor or its estate.

23.     Except with respect to Permitted Encumbrances and Assumed Liabilities or as expressly otherwise set forth in this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Liabilities and Interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection

with, or in any way relating to the Debtor, the Acquired Assets, the operation of the Debtor's Business prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, its Affiliates, its successors or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Liabilities and Interests in and to the Acquired Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien, Liabilities and Interests against the Purchaser, its Affiliates, its successors, assets, or properties; (iv) asserting any unexercised setoff or right of subrogation against any obligation due the Purchaser, its Affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets. On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be necessary to release Liens, Liabilities and Interests in or on the Acquired Assets (except Permitted Encumbrances and Assumed Liabilities), if any, as provided for herein, as such Liens, Liabilities and Interests may have been recorded or may otherwise exist.

24.     Notwithstanding the provisions of this Sale Order, the ad valorem taxes related to the Acquired Assets assessed by and payable to the Ector County Appraisal District ("Ector CAD") for the 2022 tax year ("2022 Taxes"), as described in the proof of claim filed by the Ector CAD in

estimated amounts as Claim No. 1 ("Ector CAD Claim"), shall be allocated between the Debtor and Purchaser in accordance with Section 3.6 of the Asset Purchase Agreement. The portion of the 2022 Taxes relating to the tax period starting on January 1, 2022 and ending immediately prior to the Closing Date shall be included as part of the Tax Proration adjustment to the Purchase Price set forth in the Asset Purchase Agreement, thereby reducing the cash consideration to be paid by the Purchaser; following the Closing Date, when due, the entirety of the 2022 taxes shall become the sole and exclusive responsibility and liability of Purchaser, with any and all ad valorem property tax liens arising in favor of Ector CAD as to the Acquired Assets under non-bankruptcy law to secure the 2022 taxes ("Tax Lien") to remain in full force and effect until such time as the 2022 taxes are paid by Purchaser in the ordinary course. Nothing set forth herein shall limit or impair Ector CAD's right as lien holder to enforce the Tax Lien and to otherwise pursue collection of the 2022 Taxes from Purchaser following the Closing Date, provided, however, that following the occurrence of the Closing Date, the Ector CAD Claim shall be deemed to be withdrawn and deemed satisfied as to the Debtor without further Court order. In addition, nothing herein shall limit, reduce, or discharge the obligation of the Ector CAD to refund any overpayment of ad valorem or property tax due to the Debtor on account of taxes paid by the Debtor prior to the Closing Date.

25.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

26.    The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the Debtor, its estate and creditors. The consideration given by the

Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens, Liabilities and Interests as to the Acquired Assets pursuant to this Sale Order, which releases as to the Acquired Assets shall be deemed to have been given by all holders of Liens, Liabilities and Interests in any of the Acquired Assets, other than holders of Liens, Liabilities and Interests relating to the Permitted Encumbrances and Assumed Liabilities. The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code

27.     Backup Bid. The Backup Bid is binding on the parties in accordance with the terms thereof in the event that the Debtor fails to close the Sale with the Successful Bidder. The Debtor will submit a separate form of sale order with the Backup Bidder if the Debtor proposes to proceed to Closing with the Backup Bidder. The Deposit of the Backup Bidder will be returned no later than three (3) business days following the Closing of the Sale Transaction with the Successful Bidder or, if the Debtor determines to proceed to Closing with the Backup Bid, applied in accordance with the terms thereof.

## Other Provisions

28.     Nothing in this Sale Order shall effect a release, injunction, or otherwise preclude any claim or debt whatsoever against the Debtor, its officers, directors, and responsible persons, or of the Debtor's estate by or on behalf of the United States for any liability arising out of pre-petition or post-petition tax periods, whether or not such tax liabilities were deferred under applicable law or assumed by the Purchaser.

29.     Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins (i) the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order; (ii)  any liability to any governmental unit as defined in 11 U.S.C. §

24

101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); or (iii) any Claim of a Governmental Unit arising on or after the Closing Date.  In addition, nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order. Subject to the foregoing two sentences of this Paragraph 29, nothing in this Order shall be interpreted to deem the Purchaser as the successor to the Debtor under any successor liability doctrine or other law with respect to any liabilities under environmental laws or regulations for violations or incidents prior to entry of this Order, and nothing in this Paragraph 29 shall be construed to create for any Governmental Unit any substantive right that does not already exist under law.

30.     Further, nothing in this Order or Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.  For the avoidance of doubt, nothing in this Order or the Asset Purchase Agreement shall authorize the Purchaser to operate as a power generation company following the Closing Date unless and until the Purchaser timely registers with the Public Utility Commission of Texas ("PUCT") as a power generation company ("PGC") and complies with all non-bankruptcy law in connection with that registration process, including, but not limited to, the Public Utility Regulatory Act, as appropriate. Notwithstanding any contrary provision in the Asset Purchase Agreement, any delay in the effectiveness of the Purchaser's registration as PGC shall not be relied on by Purchaser to terminate the Asset Purchase Agreement.  Further, nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, abrogates or alters any law governing the activities of the Debtor, Purchaser, or other participants in the ERCOT-administered market, including without limitation

any of the ERCOT Protocols or any of the policies, rules, guidelines, procedures, standards, market guides and criteria of ERCOT.  Seller shall continue to serve as Qualified Scheduling Entity and Invenergy Services LLC shall continue to perform under the *Qualified Scheduling Entity (QSE) Agency Agreement* dated October 7, 2020 until Purchaser has satisfied the requirements and conditions necessary to transition to its Qualified Scheduling Entity pursuant to the *ERCOT Nodal Protocols Section 16: Registration and Qualification of Market Participants* and such transition has become effective.

31.     The consideration provided by the Purchaser to the Debtor pursuant to the Asset Purchase Agreement for the Acquired Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

32.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

33.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) this chapter 11 case, (ii) any subsequent chapter 7 case into which this chapter 11 case may be converted, or (iii) any related proceeding subsequent to entry of this Sale Order,

#175094375_v8

shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

34.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry, the Debtor and Purchaser are authorized to close the Sale immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale and the Debtor and the Purchaser intend to close the Sale as soon as practicable.

35.     The Acquired Assets under the Asset Purchase Agreement shall include Avoidance Actions, provided, however, that any Avoidance Actions the Debtor may hold against the Prepetition Secured Lenders and/or against the Debtor's affiliates shall not constitute Acquired Assets under the Asset Purchase Agreement following the Closing Date. For the avoidance of doubt, no claims or causes of action of the Debtor against the Debtor's affiliates are being sold.

36.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

37.     The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Asset Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.

38.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate or any the Debtor's creditors.

39.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to Purchaser; (b) interpret, implement and enforce the provisions of this Sale Order; (c) protect Purchaser against any Liens, Liabilities and Interests in or against the Debtor or the Acquired Assets of any kind or nature whatsoever, except for Assumed Liabilities and Permitted Liens; and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Transferred Contracts.

40.     All obligations of the Debtor under the Asset Purchase Agreement or the Bidding Procedures Order shall be paid in the manner provided in the Asset Purchase Agreement or Bidding Procedures Order, whichever is applicable, without further order of this Court, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with Purchaser, its successors, or assigns.

41.     The Purchaser is a party in interest and shall have the ability to appear and be heard on all issues relate to or otherwise connected to this Sale Order, the Sale, the assumption and

assignment of the Transferred Contracts, and any issues related to or otherwise connected to the Asset Purchase Agreement and the Sale.

42.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this chapter 11 case, the terms of this Sale Order shall govern.

**Dated: June 27th, 2022**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

#175094375_v8